```
HEATHER E. WILLIAMS, #122664
Federal Defender
MATTHEW M. SCOBLE, #237432
BENJAMIN D. GALLOWAY, #214897
Assistant Federal Defenders
Designated Counsel for Service
801 I Street, 3rd Floor
Sacramento, CA  95814
Telephone: (916) 498-5700

Attorneys for Defendant
NICHOLAS MICHAEL TEAUSANT
```

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Case No. 14-cr-087 JAM |
|---|---|
| Plaintiff, | ) MOTION FOR BAIL REVIEW |
| v. | ) |
| NICHOLAS MICHAEL TEAUSANT, | ) Date: May 7, 2014 |
| | ) Time: 2:00 p.m. |
| Defendant. | ) Judge: Honorable Allison Claire |

PLEASE TAKE NOTICE THAT on May 7, 2014, at 2:00 p.m., or as soon thereafter as is convenient for the Court and the parties, defendant NICHOLAS MICHAEL TEAUSANT, by and through his counsel, Assistant Federal Defenders MATTHEW SCOBLE and BENJAMIN GALLOWAY moves for release from custody.

**MOTION**

Defendant Nicholas Teausant moves pursuant to 18 U.S.C. § 3141 for release pending trial in accordance with the Bail Reform Act. Mr. Teausant asks to present additional information, not available to his attorneys at the time of his original hearing, pertaining to the question of release. Mr. Teausant had not been interviewed by Pretrial Services prior to

the last hearing.  Since then, Pretrial Services has investigated potential housing for Mr. Teausant, spoken with possible third-party custodians, and researched bond options. The Pretrial Services officer has prepared a report for the Court, containing information that has not previously been considered in determining whether conditions may be fashioned under the Bail Reform Act.  The defense has worked with Pretrial Services and Mr. Teausant's family to fashion a release plan.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). Accordingly, the Bail Reform Act of 1984 provides that a defendant must be released on his or her personal recognizance or an unsecured personal bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b); accord United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996).

Under circumstances in which a personal recognizance bond is insufficient, the officer must choose "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(c)(1)(B). see, e.g., United States v. Infelise, 934 F.2d 103, 105 (7th Cir. 1991) (holding that under § 3142(e) defendants on racketeering charges were entitled to further consideration of electronic ankle bracelets,

rather than continued detention, as a lesser restrictive condition) (Posner, J.). In other words, the Court must consider all reasonable less restrictive alternatives to detention. See § 3142(e). Moreover, conditions set upon release are intended to be preventative and not punitive in nature. United States v. Salerno, 481 U.S. 739, 747 (1987) (evaluating the legislative history of § 3142). In sum, the Bail Reform Act does not modify or limit the presumption of innocence. See 18 U.S.C. § 3142(j).

The defense proposes that Mr. Teausant be released on a secured bond cosigned by family members. Mr. Teausant will live with his grandparents who will assume third-party custody of him. He will be placed on ankle monitor on full home detention. Mr. Teausant's passport has already been seized by the government. Given the circumstances of this case, Mr. Teausant's ties to the community, and lack of any criminal history, such conditions are sufficient to address both flight risk and danger. In an excess of caution, defense counsel will try to address possible government concerns below.

**I.  THE CURRENT CHARGES DO NOT PREVENT MR. TEAUSANT'S RELEASE OR PERTAIN TO THE RELEASE DECISION**

Mr. Teausant is charged by indictment with one count of violating 18 U.S.C. § 2339B(a)(1) for allegedly attempting to provide "material support" to a supposed terrorist group in Syria by getting on a train in San Joaquin County. The complaint and discovery in this case make it clear that a paid confidential informant groomed Mr. Teausant for months, giving him attention, feeding him information, and suggesting further action, before Mr. Teausant boarded that train.

"A judicial officer is directed by statute to consider: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." United States v. Cardenas, 784 F.2d 937, 938-939 (9th Cir. 1986).  Although it requires consideration of the charged offense, the Bail Reform Act also mandates, "Nothing in this section shall be construed as modifying or limiting the presumption of innocence."  18 U.S.C. § 3142(j).  "The weight of the evidence is the least important of these various factors, however, and the statute neither requires nor permits a pretrial determination that the person is guilty."  Cardenas, 784 F.2d at 939.  "The nature of the offense and the evidence of guilt is relevant *only in terms of the likelihood that the person will fail to appear or will pose a danger to the community*."  Id.

The nature of the charged offense does not require Mr. Teausant's detention here.  "Material support" is a broad term, and here the only "material support" that is alleged is Nick's person.  Nick is charged with attempting to give support, but never actually participated in anything illegal or dangerous.  He did not provide money, intelligence, or action to any illegal organization.

Others charged with this offense and related offenses have been released on pretrial supervision.  In United States v. Umer

1  Hayat, Cr. S. 05-240-GEB (E.D. Cal.)(First Lodi Terrorism Case),
2  the government argued that Mr. Hayat posed "a significant risk
3  of flight and danger to the community. Defendant Umer Hayat
4  allegedly paid for his son's airline ticket to Pakistan with
5  knowledge that his son wished to train at a jihadist camp,
6  traveled to Pakistan, toured jihadist camps, was aware that his
7  son attended a jihadist camp, returned to the United States, and
8  then lied to the FBI not only about his conduct, but also about
9  his son's conduct." (Docket Entry 76).  Mr. Hayat was ordered
10 released on pretrial supervision by Magistrate Judge Gregory G.
11 Hollows. (D.E. 56).  This order was affirmed by District Judge
12 Garland E. Burrell, Jr. (D.E. 79).
13      In United States v. Weiner & Jenson, Cr. S 06-35-MCE (E.D.
14 Cal.) (Earth Liberation Front Eco-Terrorism Case), the
15 government argued that ELF was a "recognized eco-terrorist
16 group" comprised of "cells" of "environmental extremists" who
17 "have been known to use arson and/or explosives to damage or
18 destroy."  "Past targets include . . . car dealerships, housing
19 developments, United States Forest Service facilities and
20 engaged in genetic engineering." (D.E. 1).  Lauren Weiner was
21 released on pretrial supervision despite government argument and
22 allegation that she was an ELF member who conspired to
23 maliciously destroy buildings by fire and an explosive, and that
24 she possessed the ingredients for an explosive. (D.E. 15).
25 Zachary Jenson was released on conditions even after his guilty
26 plea to conspiring to target and blow up commercial and
27 government facilities. (D.E. 106).
28

1        In <u>United States v. Harrison Jack et al.</u>, Cr. S. 07-266-KJM
2   (E.D. Cal.)(Hmong Insurrection Case), the government argued:

> Defendants conspired to overthrow Laos by violent means, including murder, assaults on both military and civilian officials of Laos and destruction of buildings and property of Laos. [Conspirators] engaged in extensive fundraising activities for the purpose of acquiring substantial financial assets which could be used to purchase military arms, materiel, and munitions, such as AK-47 and M-16 automatic rifles, Stinger missiles, LAW rockets, AT-4 anti-tank rockets, Claymore mines, C-4 explosives, night vision goggles, [etc.]. (D.E. 3).

9        All thirteen defendants were ordered released on pretrial supervision.

11       Similarly, in <u>United States v. Mazloum</u>, 06-00719-JGC (N.D. Ohio), the Court released a defendant charged in a conspiracy to kill, kidnap, maim, or injure victims, and provide material support to terrorists. The government argued that the defendant actively involved himself in a secret training program, attempted to recruit his own brother into the conspiracy, and participated in training sessions where he served as a trainer. He was released.

19       In <u>United States v. Tarek Mehanna</u>, 09-10017-GAO (D. Mass), the government argued:

> MEHANNA lied to the FBI in order to protect the activities of a friend and associate who was then fighting with, and receiving training from, Al Qa'ida. MEHANNA's false statements obstructed an investigation of, and involved and were intended to promote, a federal crime of terrorism as defined in Title 18, United States Code, Section 2332b(g)(5). MEHANNA should be detained because he is a risk of flight, and poses a risk that he will further obstruct justice, or threaten or intimidate prospective witnesses, or attempt to do so. MEHANNA has previously stated an intention to emigrate from the United States, and seek employment and residence in the Middle East, for the foreseeable future. On November 8, 2008, he was arrested as he attempted to fulfill that goal, that is, he was arrested as he attempted to board a flight

at Logan Airport, to begin a one-way flight to Saudi Arabia. (D.E. 6).

The Court released Mehanna on pretrial supervision. (D.E. 17). In <u>United States v. Reaz Qadir Khan</u>, 12-659-MO (D. Oregon), the government argued:

> Khan with others to provide material support and resources and to conceal and disguise the nature location of such material support and resources, knowing and intending that they were to be used in preparation for and in carrying out a conspiracy to kill, maim, or kidnap persons or damage property in a foreign country. . .. Khan provided . . . advice intended to assist . . . efforts to travel undetected from the Maldives and train to commit violent jihad; Khan provided . . . financial assistance so that [a co-conspirator] could attend a training camp in preparation for an attack such as the May 27, 2009 attack in Lahore, Pakistan.

The Court released Khan on pretrial supervision. (D.E. 8). That release order was upheld following government appeal at D.E. 14. In <u>United States v. Salah and Ashqar</u>, 03-978 (N.D. Ill.), the government argued:

> Both defendants were "organizers and leaders" who "intended to promote a federal crime of terrorism." The "intentionally selected their victims" based on religion and they attempted to obstruct justice. Further, "a victim sustained permanent injury and a dangerous weapon was used." (D.E. 159).

The Court released both defendants on pretrial supervision. (D.E. 221). Likewise, the defendants in two additional material support to terrorist cases, <u>United States v. Ali Asad Chandia</u>, 05-401-CMH (E.D. Va.) and <u>United States v. Ali Al-Timimi</u>, 04-358-LMB (E.D. Va.), were both released pretrial. (D.E. 10 and 4, respectively).

It is clear that at most the charge provides a rebuttable presumption that Mr. Teausant clearly rebuts based on his ties to the community, his extensive family support, his lack of

criminal history or history of non-appearance, and the particular circumstances of this case.

## II. THE CIRCUMSTANCES OF THE CURRENT CHARGES AND MR. TEAUSANT'S CHARACTER STRONGLY WEIGH AGAINST ANY CONCERNS ABOUT DANGER OR FLIGHT

Nick Teausant is 20 years old.  He is a student at San Joaquin Delta Community College.  He does not own car and has no driver's license.  The U.S. National Guard is in the process of discharging him because he could not meet the minimum academic requirements.  Accordingly, he never went to basic training, and has no military training of any kind. (Complaint p. 18).  He does not own a gun. (Complaint p. 13).  When directly asked by the Confidential Informant, Nick told him that he no items from military that could assist "brothers" overseas. (Complaint p. 18).  Despite his lack of any military training, Nick told the CI that he had "trained in marksmanship, mapping and physical agility" and could "run for two days straight by mentally separating himself from his body." (Complaint p. 17).  The complaint is full of fanciful details like this.

In early October 2013, the FBI paid informant began to pay attention to Nick who around this time not-coincidentally "began exploring ways of supporting violent extremist activities and providing material support to terrorist organizations." (Complaint, pp. 3, 7).  He then supposedly told the CI, "I want to fight in Syria but do not know how to get there." (Complaint p. 8).

Nick is a classic product of the social media era. Everything is posted on the internet through one of his many

-8-   *US v. Teausant, 14-cr-087 JAM*

social media accounts.  For example, Nick would post under the name "Assad Teausant bigolsmurf" with comments like "LOL" and "Ha Ha": "I would love to join Allah's army but I don't even know how to start."  Similarly, Nick had little to no understanding of the geopolitical issues that he was posting on: For example, with respect to ISIS (the "Islamic State of Iraq and Syria," which the indictment claims is a terrorist group), Nick said he was interested in the "Islamic state of um crap . . . I forget."  (Complaint p. 12.)  He also told the CI that he was "[k]eeping up on the Al Sham Levant pages" – a group that does not exist.  Nick explicitly told the CI, "I'll be the pawn. You just figure out the brainy stuff." (Complaint p. 9.)  It was the CI who took Nick to buy an Amtrak ticket, which proved a challenge for him to do by himself. (Complaint p. 20.)  The complaint details Nick's multiple failed efforts to navigate the process. (Complaint pp 20-21).

    Three days before supposedly committing the offense in this case, Nick was interviewed by the local news about a minor controversy at Delta Community College.  Responding to the claim that a man had been showing up at the campus in military dress although he had never served, Teausant told the news, "Until you've gone in through basic training, had a drill sergeant yelling at you, doing pushups, until you've put blood, sweat, tears, missed your family, missed your girlfriend . . . until you've done that, you have no business to be wearing that uniform."  Video at http://www.news10.net/story/news/local/stockton/2014/03/17/video-nicholas-teausant-california-al-qaida-terrorism-

suspect/6542359/ ; Gartenstein-Ross, "The Lies American Jihadists Tell Themselves" Foreign Policy available at http://www.foreignpolicy.com/articles/2014/03/21/the_lies_american_jihadists_tell_themselves_teausant.

　　Nick has been psychiatrically evaluated at the jail and placed on Risperdal.  His mental illness appears to have made him a vulnerable and appealing target for the paid confidential informant.  That mental illness is now under treatment and Nick will remain in treatment on pretrial supervision.

DATED: May 7, 2014                HEATHER E. WILLIAMS
                                  Federal Defender


                                  /s/ Matthew M. Scoble
                                  MATTHEW M. SCOBLE

                                  /s/Benjamin D. Galloway
                                  BENJAMIN D. GALLOWAY

                                  Assistant Federal Defenders
                                  Attorneys for NICHOLAS TEAUSANT