1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF CALIFORNIA

3                            --o0o--

4   UNITED STATES OF AMERICA,      )  Case No. 2:14-cr-00087-JAM
                                   )
5                  Plaintiff,      )  Sacramento, California
                                   )  Wednesday, May 7, 2014
6       vs.                        )  1:59 P.M.
                                   )
7   NICHOLAS MICHAEL TEAUSANT,     )  Hearing re:  defendant's
                                   )  motion for bail review.
8                  Defendant.      )
    _____    )

9                      TRANSCRIPT OF PROCEEDINGS
10              BEFORE THE HONORABLE ALLISON CLAIRE
                 UNITED STATES MAGISTRATE JUDGE

11  APPEARANCES:

12
    For Plaintiff:                 JASON HITT
13                                 U.S. Attorney's Office
                                   501 "I" Street, Suite 10-100
14                                 Sacramento, CA   95814
                                   (916) 554-2700
15
    For Defendant:                 BENJAMIN D. GALLOWAY
16                                 MATTHEW M. SCOBLE
                                   Federal Defender's Office
17                                 801 "I" Street, 3rd Floor
                                   Sacramento, CA   95814
18                                 (916) 498-5700

19  Court Recorder:                (UNMONITORED)
                                   U.S. District Court
20                                 501 "I" Street, Suite 4-200
                                   Sacramento, CA   95814
21                                 (916) 930-4072

22  Transcription Service:         Petrilla Reporting &
                                      Transcription
23                                 5002 - 61st Street
                                   Sacramento, CA   95820
24                                 (916) 455-3887

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

1

<u>SACRAMENTO, CALIFORNIA, WEDNESDAY, MAY 7, 2014, 1:59 P.M.</u>

(Call to order of the Court.)

THE CLERK:  Calling 14-cr-00087-JAM, United States v. Nicholas Michael Teausant.  This matter is on calendar for defendant's motion for bail review.

MR. HITT:  Good afternoon, Your Honor.  Jason Hitt on behalf of the United States.

THE COURT:  Good afternoon, Mr. Hitt.

MR. GALLOWAY:  And good afternoon, Your Honor.  Benjamin Galloway and Matt Scoble with Mr. Teausant who's present in court in custody.

THE COURT:  Good afternoon, Mr. Galloway, Mr. Scoble and Mr. Teausant.

All right.  I have reviewed the defendant's motion for bail review and the Pretrial Services report.  I also read very carefully the affidavit in support of the criminal complaint that initiated this prosecution.

So Mr. Hitt, let's have the government's position please.

MR. HITT:  Your Honor, the United States renews its motion for detention on the basis of both flight risk and danger given the presumption that attaches to the charges, and that the proposed release package is inadequate to protect the community from significant danger, or to protect against Mr.

2

Teausant fleeing.

        THE COURT:  Mr. Galloway?

        MR. GALLOWAY:  Your Honor, I don't have a great deal
to add to our papers, or to the really carefully considered
Pretrial Services report.  I know that that was reviewed at the
highest levels within their office.  I think that they've
assembled a package of conditions that will certainly assure
the safety of the community and his appearances.  So I'd ask
the Court release him pursuant with that recommendation.

        THE COURT:  Mr. Hitt, is there anything you want to
say about the content of the Pretrial Services report
specifically, or are you ready to submit it?

        MR. HITT:  No, Your Honor.  I would like to be heard.
I think the problem here is that this latest information that
came from the defense brief about the medical condition, the
psychiatric treatment that Mr. Teausant is receiving creates a
very significant concern and a huge burden on these
grandparents.

        It's unclear that they would have the medical
training necessary to protect the community if Mr. Teausant
were to elect, as often happens with someone in his position,
to refuse to take the medication, or to see what the side
effects are like, because it sounds like this as undiagnosed
prior to becoming in custody, and there isn't much of a track
record or baseline for what will happen while he's on this

drug.

It's also unclear what he would be doing during that time.  Will we be allowing him to go to the campus at Delta College to be around other young people, where he's expressed concern, or expressed desire to hurt people?  What will he be doing while he's home?  Will the grandparents have the ability to monitor someone if he decides that he wants to cut the monitor and leave?

There are a host of problems that can arise from someone in his condition, and without the expertise of handling this type of care, the significant side effects that occur, the scenario that seems at least plausible is that there is a significant psychiatric episode and police are asked to respond because the grandparents have lost control, and I don't see any conditions in this proposal that sort of meet that concern.

It doesn't seem like he'll be doing much of anything except staying at home, and then if he is doing productive things, or asked to do productive things, it raises the prospect of putting him in contact with the community, and I think everyone's aware that the national dialogue on mental illness and crimes of violence is fairly fresh in everyone's mind.

So these are some of the concerns that I think were present throughout the affidavit in the investigation, some of the very alarming comments about putting a bullet in his

4

mother's head.  He's shown no interest in being a father to his one-year-old daughter, in fact, talked about doing crimes of violence towards the school where she's kept.

I'm not sure that this package really can adequately protect the community if Mr. Teausant goes off his meds, or has negative reaction to this very serious -- I did a little bit of research on what the drug is that's identified, and it appears to be something that's used to treat bipolar or schizophrenic manifestations.

So I don't think anything in the report can really address that very grave concern the government has.

THE COURT:  I'll note before getting Mr. Galloway's response to that that the recommendation is for home incarceration.  It does not contemplate the defendant attending classes at the community college or leaving the home for any purpose other than court appearance, medical needs, or treatment, and religious services.

Mr. Galloway?

MR. GALLOWAY:  Yes, Your Honor.  That condition, the home incarceration condition, along with the counseling condition I think addresses the government's concerns.  He is on medication now.  I think that's precisely where he should be, and how he should be.  This package works towards preserving his mental health as opposed to keeping him locked down in the Sacramento County Jail 22 to 23 hours a day.

1    The important point to remember is no matter how this

2    case resolves, he'll be back in the community before long.  The

3    guidelines are not 20 or 30 years, they're at most six or

4    seven.  So this is a person who will be walking in the

5    community, getting him in his treatment in a state setting with

6    his grandparents who are remarkably vigilant and attentive.

7    We've met with them, and they're very impressive.  If the Court

8    has any questions, they're here and they've got a whole host of

9    chores and activities planned to keep Nic busy.  They're going

10   to keep him busy.  I have no doubt about that.

11   Finally, with respect to his daughter, I just have to

12   say, he has been very active with half custody with his

13   daughter.  He's a very positive force in her life, and she

14   means all the world to him, as is true with Nic's mother who's

15   also present.  They're very much involved.

16   The reference to the preschool, and the shooting, and

17   so on, is one of countless blatherings that frankly Nic has

18   undertaken on-line, and by chats, and so on, and our memo makes

19   it clear that it's just part of a lot of hot air and no action

20   at all.

21   And so we think the recommendation addresses the

22   government's concerns, and again, we'd ask the Court to follow

23   it.

24   THE COURT:  One question for Mr. Sheehan.  When you

25   discussed the responsibilities of the third-party custodianship

6

with the grandparents, were they aware of the psychiatric
medication that's now been prescribed?

MR. SHEEHAN:  No, Your Honor.  That was previous to
finding out.  I just learned that today.

THE COURT:  Okay.  Mr. Galloway, have you talked to
the grandparents since the Risperdal was prescribed?  They
understand what's going on with that?

MR. GALLOWAY:  Your Honor, we only learned that --
only able to confirm that this morning, so we haven't had the
opportunity to meet with them and talk with them about that
yet.

THE COURT:  Okay.  Where are the grandparents?  You
folks still willing to act as third-party custodians
understanding that your grandson has been prescribed
psychiatric medication?

MS. SPEAKER:  Yes.

THE COURT:  Are you prepared to make sure he takes it
everyday as prescribed?

MR. SPEAKER:  I am.

THE COURT:  All right.  I'm somewhat familiar with
the medication.  I also refreshed the memory that I had about
it before coming out here today.  There's always a risk of side
effects, no more in this case really, than in any other, and I
trust that the grandparents will be able to manage that.

This is also not a situation which prior -- you

7

pointed out yourself, Mr. Hitt, that the need for this

medication has only been determined since he's been in here.

      While I certainly understand the defense theory that

no doubt will be elaborated upon in the weeks and months to

come about the relationship between any underlying mental

health issues and the offense conduct, the fact remains that

other than the inflammatory on-line blathering as Mr. Galloway

called it, there does not appear to be a history of outbursts

of the kind that you described as a possibility that might

disrupt pretrial release.  And in the absence of those sort of

incidents, this is not a case, in other words, where this

medication is being prescribed in order to control outbursts.

There's no history of that.

      So for that reason, the prescription of the Risperdal

does not cause me to doubt the adequacy of the proposed

conditions.

      The offense conduct is very serious.  This is a very

serious case.  But what's being proposed to me I think

adequately will ensure Mr. Teausant's appearance in court and

protect the community.  These are extremely stringent

conditions involving home confinement with third-party

supervision and counseling.  He'll be completely unable to

access the internet, which is the only forum in which any, what

might be characterized as threatening behavior, has taken place

to date.  So I do find that adequate.

8

MR. HITT:  Your Honor, I'm sorry to interrupt, but --

THE COURT:  Yeah.

MR. HITT:  -- I want to make a record please.

THE COURT:  Make a record.

MR. HITT:  That first it isn't just on-line.  These were some of the most alarming comments about putting a bullet in his other's head and tying her up if she got in the way of his plans, that was actually face to face during a recorded conversation as well as the information about taking out his daughter's school.

The other thing I didn't address, but I should have, is the nature of a collateral bond here is designed to place in the mind of the releasee the significance of the loss to the family members who are posting this.  And I think the defense brief goes a long way in sort of demonstrating that Mr. Teausant does not seem to be someone who has ever really taken any responsibility or would appreciate taking away from his own family members.

The last relevant act we have prior to his arrest is living under the conditions of his mother, and leaving, and the first that anyone in the family knows, he's three states north, and he's at the border.  And I think there's a very serious concern, and what I wanted to make clear is on the flight risk as well, and that the amount of bond is inadequate, and that

9

there's nothing really stopping Mr. Teausant from cutting that bracelet and taking off.

THE COURT:  Mr. Galloway, do you want to make a record of your response to that?

MR. GALLOWAY:  Yes, Your Honor.  Just two things. One is when he left to get on that bus, and train, he essentially live tweeted all the way up, posting, and tweeting and so on.  And so anyone who knew him knew what he was doing and where he was.  In fact, I believe his stepmother notified authorities that he was posting from somewhere north near the border.

Secondly, the inducement that I think ultimately got him on that bus was promises by the U.C. and the C.I. that his family would be taken care of.  That was -- you know, his family is tremendously important to him, and while there's very little equity, if any, in his grandparents' home, it's their home, and he's not going to do anything to get them out of their home.  Quite the opposite, he's going to make sure that nothing happens to it.

Submitted.

THE COURT:  All right.  Mr. Hitt, I take your point about the fact that not all of the inflammatory talk was on-line, nonetheless, it was all talk, and I don't mean to minimize the seriousness of verbal threats and statements of intent to cause damage to the government and to members of

one's family.  Those are very serious and sometimes criminal

acts.  You know, we can all see the fights that are going to

happen in this case about whether these are just thought

crimes, or whether it crossed the line, to what extent there

was entrapment, and I don't need to get into any of that.

But given the type of offense conduct we're talking

about, and the absence of other types of acts, it is an attempt

case.  It's attempt to materially support al Quaida and Iraq,

and there is -- are no allegations and no evidence that I've

seen thus far that indicate affirmative steps other than

getting on the train to support a terrorist organization.

Under those circumstances, and in light of the

contents of the Pretrial Services report, and Mr. Galloway's

proffer, I do find that there are conditions that will be

sufficient to protect the community and to ensure Mr.

Teausant's appearance in trial.

I therefore order the defendant released on a

$200,000 bond which will be partially secured by the posting of

Michael and Helen Halderman's (phonetic) property and the

remainder to be unsecured and co-signed by the defendant's

paternal grandparents, Sharon and Kenneth Nettler (phonetic),

and the defendant's step-mother, Dr. Alicia Teausant, with

Pretrial Services supervision, and the following special

conditions of release:

Mr. Teausant, you must report to and comply with all

the rules and regulations of the Pretrial Services agency.  You

will be released on bond tomorrow morning, Thursday, May 8th at

9:00 a.m. from the custody of the U.S. Marshal directly to the

custody of Pretrial Services.

MR. HITT:  Your Honor, I'm sorry to interrupt again.

THE COURT:  Yes?

MR. HITT:  I was -- I meant to say at the conclusion

of the Court's order, but I probably should now, given what the

condition that was read, and I'm --

THE COURT:  Yes.

MR. HITT:  The government's asking that the Court

stay its release order.  We would like to seek review from the

district judge.  We'll ask to do an expedited review before

Judge Mendez on the bail determination.  I can work with

defense counsel to make sure that it gets up and he's not

unnecessarily detained, but longer if Judge Mendez ultimately

agrees.

THE COURT:  All right.

MR. HITT:  But that is the request.

THE COURT:  I'm going to grant that.  Remind me at

the end.

So what this means, Mr. Teausant, is that although I

just announced that you would be released tomorrow morning, the

government's going to appeal my ruling, and that means you're

going to have to wait to be released until after a district

1  judge has the opportunity to review my ruling.  So it will not

2  be tomorrow morning, but it will be -- if I am upheld, the day

3  after the ruling upholding me.

4         You will be released to the third-party custody of

5  your paternal grandparents, Sharon and Kenneth Nettler.  You

6  are to reside with those grandparents at a location approved by

7  the Pretrial Services officer and not move or absent yourself

8  from that residence for more than 24 hours without advance

9  authorization by the Pretrial Services officer.

10        Your travel is restricted to the Eastern District of

11 California unless otherwise approved in advance by the Pretrial

12 Services officer.  You shall surrender your passport to the

13 Clerk, U.S. District Court and obtain no passport during the

14 pendency of this case.

15        You shall not possess a firearm or ammunition,

16 destructive device or other dangerous weapon.  Additionally,

17 you shall provide written proof of divestment of all firearms

18 or ammunition currently under your control.  In addition, all

19 firearms in the custody of the third-party custodian or at that

20 residence shall be removed from the premises.

21        You must refrain from any use of alcohol and any use

22 of a narcotic drug or other controlled substance without

23 prescription from a licensed medical practitioner.  You must

24 notify the Pretrial Services agency immediately of any

25 prescribed medication, and you may not use marijuana even for

medicinal purposes and even with a prescription from a doctor.

You shall submit to drug or alcohol testing as approved by the Pretrial Services officer and pay all or parts of the cost of that testing based on your ability to pay as will be determined by the Pretrial Services officer.

You shall participate in a program of medical or psychiatric treatment including treatment for drug or alcohol dependency, or mental health issues as approved by the Pretrial Services officer.  You shall pay all or part of the costs of counseling services based on your ability to pay as determined by the Pretrial Services officer.

You shall report any contact with law enforcement to the Pretrial Services officer within 24 hours.

You shall participate in the following location monitoring program component, and abide by all the requirements of the program.  This includes having a location monitoring unit installed in your residence, that is, your grandparents' residence, and a radio frequency transmitter device attached to your person.  That means you'll be wearing an ankle bracelet.

You shall comply with all instructions for the use and operation of this device as given to you by the Pretrial Services agency and the monitoring company, and you shall pay all or part of the costs of this program based on your ability to pay as determined by the Pretrial Services agency.

You will be on home incarceration, which means that

14

you are restricted to the residence at all times, except for
medical needs or treatment, religious services, and court
appearances pre-approved by the Pretrial Services officer.

You shall not access the internet.  That is without
qualification.  You shall not access the internet anywhere in
any way, and you shall not use or possess a computer in your
residence or at any other location unless otherwise approved in
advance by the Pretrial Services officer.

Your paternal grandparents acting as your custodian
may possess one computer with wifi access, but it's going to be
password protected and kept in a locked room to which you will
not have access.  You shall not use any device offering
internet access as a means of accessing any material that
relates to the criminal activity charged in the pending
allegations.  That means cell phones and other mobile devices
may not be used to access the internet.

You shall take all medication as prescribed by a
licensed medical practitioner, and you shall report any
prescriptions provided by a licensed medical practitioner to
the Pretrial Services officer within 48 hours of receipt.

Do you understand those conditions, sir?

THE DEFENDANT:  I do, ma'am.

THE COURT:  All right.  And this order is going to be
stayed pending the government's appeal of the detention ruling.

MR. HITT:  Thank you, Your Honor.

15

1      THE COURT:  We're nonetheless going to get the
2 paperwork in place.  That means that there's going to be a
3 notice to defendant being released signed so we have -- does
4 that make sense to both, to have that on file, get the bond
5 signed, get all the paperwork put together so that if my ruling
6 is upheld there won't be a delay in release, and if it's not,
7 we're back to square one.
8      MR. GALLOWAY:  Thank you, Your Honor.  And I would
9 ask for I think the standard 10 days to get the security, the
10 paperwork in place.
11      THE COURT:  Yeah.  That's granted.
12      MR. GALLOWAY:  Thank you.
13      THE COURT:  But please get those signatures for the
14 unsecured portion as soon as possible today --
15      MR. GALLOWAY:  Will do.
16      THE COURT:  -- as folks are here.
17      We -- the case is already scheduled for matters
18 unrelated to detention, is it not?
19      MR. HITT:  Yes, Your Honor.  We do have a status
20 conference set before the District Court.
21      THE COURT:  All right.  Is there anything else that
22 we need to take care of then, at this time?
23      MR. GALLOWAY:  I don't believe so, Your Honor.
24      MR. HITT:  No, Your Honor.  Thank you.
25      THE COURT:  All right.  Thank you.

1    MR. GALLOWAY:  Thank you.

2    (Whereupon the hearing in the above-entitled matter was

3    adjourned at 2:18 p.m.)

4                         --o0o--

5                       CERTIFICATE

6    I certify that the foregoing is a correct transcript from

7    the electronic sound recording of the proceedings in the above-

8    entitled matter.

9

10   _____      May 8, 2014

11   Patricia A. Petrilla, Transcriber

12   AAERT CERT*D-113

13

14

15

16

17

18

19

20

21

22

23

24

25