UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JOHN A. MENDEZ, JUDGE

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                  No. 2:14-cr-00087 JAM

NICHOLAS MICHAEL TEAUSANT,

                    SACRAMENTO, CA
        Defendant.          10:15 A.M.

_____/


REPORTER'S TRANSCRIPT

ENTRY OF GUILTY PLEA

TUESDAY, DECEMBER 1, 2015

For the Government:         UNITED STATES ATTORNEY'S OFFICE
                            501 I Street, Suite 10-100
                            Sacramento, CA  95814
                            BY:  JEAN M. HOBLER
                                 JASON S. HITT
                                 Assistant U.S. Attorneys

(APPEARANCES CONTINUED ON NEXT PAGE)

Court Reporter:             Kelly O'Halloran, CSR #6660, RPR
                            Official Court Reporter
                            501 I Street
                            Sacramento, CA  95814
                            (916) 448-2712


Mechanical Stenography - Computer-Aided Transcription

APPEARANCES CONTINUED


For the Government:          ANDREW SIGLER
                            Trial Attorney
                            National Security Division
                            U.S. Department of Justice
                            950 Pennsylvania Avenue, NW
                            Washington, DC  20530

For the Defendant:          FEDERAL DEFENDER
                            801 I Street, 3rd Floor
                            Sacramento, CA  95814
                            BY:  MATTHEW M. SCOBLE
                                 BENJAMIN D. GALLOWAY

SACRAMENTO, CALIFORNIA

TUESDAY, DECEMBER 1, 2015, 10:15 A.M.

---oOo---

1    THE CLERK:  Criminal S-14-87; United States versus

2  Nicholas Michael Teausant.

3    MS. HOBLER:  Good morning, your Honor.  Jean Hobler,

4  Andrew Sigler, and Jason Hitt for the United States.

5    MR. SCOBLE:  And good morning, your Honor.  Matthew

6  Scoble and Benjamin Galloway for Nicholas Teausant.

7  Mr. Teausant is present before the Court.  He's in custody.

8    THE COURT:  All right.  Good morning.  The defense

9  has filed a "Notice of Intent to Plead Guilty and Factual

10 Proffer in Support of Guilty Plea."  I assume the government

11 has received that.

12   MS. HOBLER:  I received a copy, your Honor.  I do not

13 believe it has yet been filed.  We needed a signature from

14 Mr. Teausant.

15   MR. SCOBLE:  And I do have a signed copy I can tender

16 to the Court, your Honor.

17   THE COURT:  Okay.  Ms. Hobler, the government does

18 agree with the factual proffer?

19   MS. HOBLER:  Yes, your Honor.

20   THE COURT:  Okay.  We'll get into that when we get to

21 the factual basis.  I've been provided also -- I'm not sure if

22 the government or the defense provided it -- with the elements

1   of the offense; a violation of 18 U.S.C., Section 2339B, as

2   set forth in the indictment.

3           MS. HOBLER:  As well as the maximum penalties, your

4   Honor, on the third page of that document.

5           THE COURT:  Okay.  All right.  Mr. Vine, let's place

6   Mr. Teausant under oath.

7           THE CLERK:  Yes, your Honor.  Mr. Teausant, your

8   right hand for me, please.

9       (Defendant sworn.)

10          THE DEFENDANT:  I do.

11          THE COURT:  Mr. Teausant, stand in front of that

12  microphone.  I'm going to ask you a number of questions to

13  make sure that this is a valid plea and that you understand as

14  to what you are pleading guilty to this morning.  If you do

15  not understand the question I'm asking you, just let me know

16  that.  I'll rephrase it to make sure that you do understand it

17  before you answer it.  And if at any time you want to speak to

18  your lawyers, just let me know that, and I will allow you to

19  do so.  Okay?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Let's start by having you state your full

22  name for the record.

23          THE DEFENDANT:  Nicholas Michael Teausant.

24          THE COURT:  What is your date of birth?

25          THE DEFENDANT:  10/26/93.

1          THE COURT:  We did have a competency evaluation

2     performed.  The parties have, I believe, filed a stipulation.

3     They have.  You actually filed this on the docket.

4          MS. HOBLER:  Your Honor, I don't recall a filed

5     stipulation.  I do recall appearing in court following the

6     report and the defense agreeing that Mr. Teausant was

7     competent.

8          THE COURT:  I do have a stipulation in front of me

9     which I've signed.

10          MR. GALLOWAY:  Yes, your Honor.  As I recall, there

11     was a stipulation and proposed order which was signed.

12          THE COURT:  Okay.  Was it ever filed, Mr. Vine?  Do

13     you know?

14          THE CLERK:  That I'm not sure.

15          THE COURT:  In any event, there was a stipulation

16     regarding competency and an order which the Court signed on

17     August 3, 2015.  If it's not on the docket, it will be.  And I

18     want to make sure that the record is clear with respect to

19     that.  So although Mr. Teausant has been treated, the issue is

20     whether he is competent to proceed this morning.

21       Mr. Teausant, are you taking prescription medication at

22     the present time?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Have you taken that medication within the

25     last 24 hours?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Tell me what medications you are taking.

3          THE DEFENDANT:  I've taken Keppra for my seizures,

4    and I've taken Zyprexa for my schizophrenia.

5          THE COURT:  Are either of those medications affecting

6    your ability to understand my questions or these court

7    proceedings this morning?

8          THE DEFENDANT:  No, your Honor.

9          THE COURT:  Do you feel ready to proceed?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Okay.  Have you taken any other

12   medications?

13         THE DEFENDANT:  No, your Honor.

14         THE COURT:  All right.  Have you consumed any drugs

15   or alcohol in the last 24 hours?

16         THE DEFENDANT:  No, your Honor.

17         THE COURT:  Do any of the counsel know of any reason

18   why Mr. Teausant is not competent to enter a plea this

19   morning?

20         MR. SCOBLE:  None, your Honor.

21         MR. GALLOWAY:  No, your Honor.

22         MS. HOBLER:  No, your Honor.

23         THE COURT:  Mr. Teausant, are you satisfied with the

24   representation and advice that has been given to you in this

25   case by your attorneys?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Are you entering your guilty plea

3     voluntarily?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  And are you entering your guilty plea

6     because you are, in fact, guilty?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  This is an open plea.  So there is no

9     written plea agreement in this case.  Has anyone made any

10    promises to you of any kind in order to get you to enter a

11    guilty plea in this case?

12         THE DEFENDANT:  No, your Honor.

13         THE COURT:  Has anybody threatened you or your family

14    or anyone close to you in order to get you to enter a guilty

15    plea in this case?

16         THE DEFENDANT:  No, your Honor.

17         THE COURT:  Okay.  The offense to which you are

18    offering a guilty plea is a felony offense.  If your plea is

19    accepted, you will be found guilty of that offense, and that

20    finding may deprive you of valuable civil rights, such as the

21    right to vote, the right to serve on a jury, and the right to

22    possess any kind of a firearm.  Do you understand that?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  I don't believe he is, but is

25    Mr. Teausant on probation or parole for any other offense?

1          MR. SCOBLE:  He's not, your Honor.

2          THE COURT:  Okay.  Mr. Teausant, the maximum penalty

3     provided by law for this crime is as follows.  These are

4     maximum penalties.  15 years in prison.  A fine of up to

5     $250,000.  A term of supervised release up to life.  A

6     mandatory special assessment of $100.

7        What's the penalty for if he violates supervised release?

8          MS. HOBLER:  Your Honor, for supervised release, the

9     statute is not particularly clear as to -- you know, they have

10    this additional provision for statutes like this, and it

11    doesn't tell you how it goes with the rest of them, but I

12    would say that given it's a 15-year term, the supervised

13    release would normally be a three-year term of supervised

14    release absent this other provision.  I think the best we can

15    go on is to say that the term of supervised release for

16    revocation would be approximately the same as the three-year

17    term.  So two years.  Does that make any sense?

18         THE COURT:  Mr. Scoble and Mr. Galloway, do you want

19    to weigh in?

20         MR. GALLOWAY:  Your Honor, as charged, the statutory

21    maximum for a violation is two years with a three-year term of

22    supervised release.  However, as the government indicates, if

23    certain statutory provisions are satisfied, then there can be

24    up to a life term of supervised release.  And I agree with the

25    government that the statute doesn't specify what the length of

1　the violation would be, the length of the term of

2　incarceration subsequent to violations.  So I agree that a

3　term of two years appears to be the only concrete number we

4　can provide.

5　　　　　THE COURT:  Mr. Teausant, what all that means is if

6　you are placed on supervised release and you violate the terms

7　of your supervised release, you might be required to serve an

8　additional two years in prison.  We will make sure that that

9　is accurately reflected in your presentence report as well.

10　　　Do you understand that?

11　　　　　THE DEFENDANT:  Yes, your Honor.

12　　　　　THE COURT:  Okay.  No restitution involved in this;

13　is that right?

14　　　　　MS. HOBLER:  That is correct, your Honor.

15　　　　　THE COURT:  And any forfeiture provisions?

16　　　　　MS. HOBLER:  No, your Honor.

17　　　　　THE COURT:  All right.  Mr. Teausant, under the

18　Sentencing Reform Act of 1984, there are sentencing guidelines

19　that judges are required to take into consideration in

20　determining the appropriate sentence in a criminal case.

21　There's also statutory sentencing factors found at 18 U.S.C.,

22　Section 3553(a), which I'm also required to consider in

23　determining the appropriate sentence in your case.

24　　　Have you and your attorneys discussed how the sentencing

25　guidelines and the statutory sentencing factors might apply to

1   your case?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  And Mr. Galloway and Mr. Scoble, do you

4   believe that Mr. Teausant has a basic understanding as to how

5   those guidelines and statutory factors might apply to his

6   case?

7          MR. SCOBLE:  I do, your Honor.

8          MR. GALLOWAY:  Yes, your Honor.

9          THE COURT:  Mr. Teausant, I'm not able to determine

10  the actual sentence that you will receive until I've had a

11  chance to review the advisory sentencing guideline that's

12  applicable to your case, the statutory sentencing factors I'm

13  going to get.  And you're going to get a chance to review

14  this, a presentence report from probation that will contain a

15  lot of information that I rely upon in determining what

16  sentence you should receive.  I'm sure that both sides will

17  also file briefs.  Your attorneys will file a brief on your

18  behalf that will also assist the Court in determining what the

19  appropriate sentence is.  And I also will give you, your

20  attorneys, and the government's attorney an opportunity to

21  address the Court at your sentencing hearing.

22     I want you to understand that no matter what anyone might

23  recommend, probation, the government, or even your lawyers,

24  none of those recommendation are binding on the Court.

25  Sentencing is entirely up to me.  And if I decide not to

1 accept any of those recommendation, you're still going to be
2 bound by your guilty plea, and you will have no right to
3 withdraw it.
4      Do you understand that?
5           THE DEFENDANT:  Yes, your Honor.
6           THE COURT:  Once it has been determined what
7 sentencing guideline applies to your case, I do have the
8 authority in some circumstances to impose a sentence that is
9 greater than or less than the sentence that's called for by
10 these sentencing guidelines.
11      Do you understand that?
12           THE DEFENDANT:  Yes, your Honor.
13           THE COURT:  In the federal system, parole has been
14 abolished.  So if you are sentenced to prison, you will not be
15 released on parole.  Because this is an open plea, you will
16 have the right to appeal any sentence that I impose.
17      Do you understand that?
18           THE DEFENDANT:  Yes, your Honor.
19           THE COURT:  Okay.  You do have a right to continue to
20 plead not guilty to this charge.  If you continue to plead not
21 guilty, you have the following constitutional rights.  You
22 have the right to a trial by jury; the right to be presumed
23 innocent; the right to require the government to prove your
24 guilt beyond a reasonable doubt.  You have the right to an
25 attorney at all stages of the proceedings.  You have the right

1    to present a defense to the charge.  You have the right to see

2    and hear all witnesses and evidence that would be presented

3    against you.  And you have the right to cross-examine

4    witnesses.  You have the right to use the power of this Court

5    to bring in your own witnesses and evidence in order for you

6    to present your defense.  You have the right to remain silent.

7    And you also have the right to not have your silence or

8    decision to not present evidence at trial used against you.

9        Do you understand each of these constitutional rights as

10   I've just described them to you?

11            THE DEFENDANT:  Yes, your Honor.

12            THE COURT:  Before I can accept a guilty plea from

13   you, you must give up each of those constitutional rights

14   other than your right to an attorney.

15       Are you willing to do that at this time?

16            THE DEFENDANT:  Yes, your Honor.

17            THE COURT:  All right.  Mr. Scoble, join in the

18   waiver?

19            MR. SCOBLE:  So joined, your Honor.

20            THE COURT:  All right.  I want to go over the

21   elements of this offense with you.  I believe that you may

22   have seen these, but for the record I want to go through these

23   with you, Mr. Teausant.

24       In order to prove this crime, the government would have to

25   prove beyond a reasonable doubt all of the following elements

of this charge:

First, that you knowingly provided, or attempted to provide, material support or resources to a foreign terrorist organization.

Second, that you knew that the organization was a designated terrorist organization or that the organization had engaged or was engaging in terrorist activity or terrorism.

Third, that jurisdiction is appropriate because you are a national of the United States or the offense occurred in whole or in part within the United States.

The term "material support or resources" means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice, or assistance, safe houses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, and transportation, but does not include medicine or religious materials. 18 U.S.C., 2339A(b)(1). 18 U.S.C., Section 2339B(g)(4).

The term "material support or resources" has the same meaning given that term in Section 2339A, including the definitions of "training" and "expert advice or assistance" in that section.

Also, under Section 2339B(h), "Provision of Personnel -- no person may be prosecuted under this section in connection

with the term 'personnel' unless that person has knowingly

provided, attempted to provide, or conspired to provide a

foreign terrorist organization with one or more individuals

(who may be or include himself) to work under that terrorist

organization's direction or control or to organize, manage,

supervise, or otherwise direct the operation of that

organization.  Individuals who act entirely independently of

the foreign terrorist organization to advance its goals or

objectives shall not be considered to be working under the

foreign terrorist organization's direction and control."

Terrorist organization is designated as such and defendant

knew it.

Defendant knew the organization had engaged in or was

engaging in terrorist activity.  Terrorist activity is defined

in 8 U.S.C., Section 1182(a)(3)(B)(iii) and 22 U.S.C.,

Section 2656f(d)(2).

Under Section 1182(a)(3)(B)(iii) of Title 8, terrorist

activity is defined as follows.  "As used in this chapter, the

term 'terrorist activity' means any activity which is unlawful

under the laws of the place where it is committed (or which,

if it had been committed in the United States, would be

unlawful under the laws of the United States or any state) and

which involves any of the following:

"(I)  The highjacking or sabotage of any conveyance,

including an aircraft, vessel, or vehicle.

1    "(II)  The seizing or detaining, and threatening to kill,

2    injure, or continue to detain, another individual in order to

3    compel a third person, including a governmental organization,

4    to do or abstain from doing any act as an explicit or implicit

5    condition for the release of the individual seized or

6    detained.

7    "(III)  A violent attack upon an internationally protected

8    person, as defined in Section 1116(b)(4) of Title 18, or upon

9    the liberty of such a person.

10    "(IV)  An assassination.

11    "(V)  The use of any (a) biological agent, chemical agent,

12    or nuclear weapon or device, or (b) explosive, firearm, or

13    other weapon or dangerous device (other than for mere personal

14    monetary gain), with intent to endanger, directly or

15    indirectly, the safety of one or more individuals or to cause

16    substantial damage to property.

17    "(VI)  A threat, attempt, or conspiracy to do any of the

18    foregoing."

19    Under 22 U.S.C., Section 2656(d)(2), the term "terrorism"

20    means premeditated, politically motivated violence perpetrated

21    against noncombatant targets or subnational groups or

22    clandestine agents.

23    Mr. Teausant, have you had enough time to discuss the

24    elements of this offense with your attorneys?

25              THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Have they been able to answer any

2   questions you may have?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And do you, in fact, understand all of

5   these elements that the government would be required to prove

6   if this case went to trial?  Do you understand that?

7          THE DEFENDANT:  I do, your Honor.

8          THE COURT:  Okay.  In terms of the proposed factual

9   proffer, Mr. Teausant, have you had a chance to go over this

10  factual proffer, all of these facts, with your attorneys?

11          THE DEFENDANT:  I have, your Honor.

12          THE COURT:  Have you had enough time to do that?

13          THE DEFENDANT:  I have, your Honor.

14          THE COURT:  Do you agree that each and every fact

15  that is set forth in this factual proffer is true and

16  accurate?

17          THE DEFENDANT:  I do, your Honor.

18          THE COURT:  All right.  The question that I raised

19  when I first reviewed this factual proffer was the issue of

20  whether it was inconsistent, because in factual proffer --

21  Mr. Teausant, this is at page 4, lines 24 and 25.  It reads:

22  "Teausant denied antagonism toward the United States and

23  knowledge that ISIS was a terrorist group."  And I raised the

24  issue, at least raised the issue in my mind, as to whether

25  that at least prohibited the Court from finding that there was

1    a factual basis.

2            MS. HOBLER:  Your Honor, I can respond to that.

3            THE COURT:  Hang on.  We actually researched it.  And

4    the answer is as a matter of law that the factual basis as set

5    forth, at least the proffer, still allows the Court to find

6    that there is a factual basis and allows the Court to accept

7    the defendant's guilty plea.

8        The short answer is that the government can prove the

9    knowledge requirement by demonstrating that the defendant knew

10   that the group engaged in certain designated terrorist

11   activities.  And these activities include hostage taking and

12   use of explosives in ways that are unlawful in the country in

13   which they occur or are unlawful if committed in the United

14   States.

15       The lengthier analysis which I'm going to put on the

16   record is as follows:  Mr. Teausant is pleading guilty to

17   material support under 18 U.S.C., Section 2339B.  That section

18   includes a mens rea requirement that can be met in three ways:

19   (1) if the defendant knows that the organization is a

20   designated terrorist organization, (2) if he knows that the

21   organization has engaged or engages in terrorist activity as

22   defined in Section 212(a)(3)(B) of 18 U.S.C.,

23   Section 1182(a)(3)(B), or (3) if he knows that the

24   organization has engaged or engages in terrorism as defined in

25   Section 140(d)(2) of the Foreign Relations Authorization Act,

1    Fiscal Years 1988 and 1989.  18 U.S.C., Section 2339B(a)(1).

2        As to the second method, the INA, the Immigration and

3    Nationality Act, defines "terrorist activity" as any activity

4    which is unlawful under the laws of the place where it is

5    committed or which, if it had been committed in the United

6    States, would be unlawful under the laws of the United States

7    or any state, and which involves any of the following:

8        (1) The highjacking or sabotage of any conveyance,

9    including an aircraft, vessel, or vehicle.

10       (2) The seizing or detaining, and threatening to kill,

11   injure, or continue to detain, another individual in order to

12   compel a third person, including a governmental organization,

13   to do or abstain from doing any act as an explicit or implicit

14   condition for the release of the individual seized or

15   detained.

16       (3)  A violent attack upon an internationally protected

17   person, as defined in Section 1116(b)(4) of Title 18, or upon

18   the liberty of such a person.

19       (4)  An assassination.

20       (5)  The use of any biological agent, chemical agent, or

21   nuclear weapon or device, or explosive, firearm, or other

22   weapon or dangerous device, other than for mere personal

23   monetary gain, with intent to endanger, directly or

24   indirectly, the safety of one or more individuals or to cause

25   substantial damage to property.

1    Title 8, U.S.C., Section 1182(a)(3)(B)(iii).

2    In this case, Mr. Teausant denied knowledge that ISIS was

3    a designated terrorist organization, which forecloses the

4    first method of establishing mens rea.  However, his

5    statements establish knowledge under the second method.  In

6    particular, he has acknowledged under this factual basis that

7    ISIS's tactics include taking hostages, which qualifies as a

8    terrorist activity under Title 8, United States Code,

9    Section 1182(a)(3)(B)(iii)(II), and the use of RPGs, which is

10   terrorist activity under Title 8, United States Code,

11   Section 1182(a)(3)(B)(iii)(V)(b).

12   He also acknowledged that these activities are violations

13   of Syrian law and would be violations of U.S. law if they

14   occurred here, fulfilling the statutory requirement that the

15   activity is or was unlawful under the laws of the place where

16   it is committed or which, if it had been committed in the

17   United States, would be unlawful under the laws of the United

18   States or any state.  Title 8, United States Code,

19   Section 1182(a)(3)(B)(iii) and the factual proffer on page 4,

20   line 27 to page 5, line 2.

21   Is that what you were going to say, Ms. Hobler?

22       MS. HOBLER:  Not quite as lengthy, your Honor, but

23   yes.  I will also note that the factual basis is intended to

24   provide a sufficient factual basis for the charge here.  I

25   think the government, if we went to trial, would prove that

1  Mr. Teausant knew that ISIS was a designated foreign terrorist

2  organization despite his disclaimer on that point. But that's

3  neither here nor there for the purpose of the guilty plea.

4         THE COURT: Okay. Do I have a signed copy of this,

5  Mr. Scoble and Mr. Galloway, the "Notice of Intent to Plead

6  Guilty"?

7         MR. SCOBLE: I just provided it to the Court, your

8  Honor.

9         THE COURT: There it is. Thank you. Okay. We'll

10  make sure this is filed, and it will be on the docket. In

11  terms of the factual basis, Mr. Teausant has agreed to that.

12  All counsel agree then to the factual basis as well?

13         MS. HOBLER: Yes, your Honor.

14         MR. SCOBLE: Yes, your Honor.

15         THE COURT: Okay. And the Court does find that there

16  is a factual basis for the plea in this case.

17      All right. Mr. Teausant, you are charged in this

18  indictment with violating Title 18, United States Code,

19  Section 2339B(a)(1), the crime of attempting to provide

20  material support and resources to a foreign terrorist

21  organization. As to the charge in this indictment, how do you

22  now plead: Guilty or not guilty?

23         MS. HOBLER: Your Honor, may I just clarify a couple

24  of things before we get to that?

25         THE COURT: Go ahead.

1          MS. HOBLER:  One is you did advise the defendant of

2    his right to appeal any sentence.  Because this is a

3    nonconditional plea, I understand he will not have the right

4    to appeal the conviction itself.  So I just wanted that to be

5    clear for the record before he entered a plea.

6          THE COURT:  Counsel agree with that?

7          MR. GALLOWAY:  I hadn't considered it, your Honor.

8          THE COURT:  What's that?

9          MR. GALLOWAY:  I hadn't considered it.  Frankly,

10   that's the first we've heard of it.

11         MS. HOBLER:  Your Honor, under Rule 11(a), there are

12   three types of pleas:  A general guilty plea, a conditional

13   plea, which would require the consent of the government and a

14   written notice from the defense of the intent to reserve the

15   right to appeal some preconviction issue, and a nolo plea.  So

16   those are the options, and that's what the government is

17   basing this on, as well as case law that interprets that.

18         MR. GALLOWAY:  We accept the government's statement

19   of the law, and it's certainly not our intent to appeal the

20   conviction here.

21         THE COURT:  All right.  The Court will so find.

22      Anything else, Ms. Hobler?

23         MS. HOBLER:  Just for the record, Mr. Teausant did

24   indicate he was taking medication for schizophrenia.  I think

25   that's going to be an issue that arises during sentencing, the

1  diagnosis.  The government is not conceding that that is an

2  appropriate diagnosis here.  But that's all.

3          THE COURT:  That's a sentencing issue.

4          MS. HOBLER:  Yes.

5          THE COURT:  Okay.

6          MS. HOBLER:  Thank you, your Honor.

7          THE COURT:  All right.  Mr. Teausant, you are charged

8  with, again, violation of 18 U.S.C. Section 2339B(a)(1),

9  attempting to provide material support and resources to a

10  foreign terrorist organization.  As to this charge, how do you

11  now plead:  Guilty or not guilty?

12          THE DEFENDANT:  Guilty, your Honor.

13          THE COURT:  It is the finding of the Court in the

14  case of United States versus Nicholas Teausant that the

15  defendant is fully competent and capable of entering an

16  informed plea.  The Court also finds there is a factual basis

17  for his plea and that the defendant has made a voluntary,

18  knowing, and intelligent waiver of his constitutional rights.

19  His plea is accepted.  He is now adjudged guilty of this

20  offense.

21      A written presentence report will be prepared by probation

22  to assist the Court in sentencing.  Mr. Teausant, you will be

23  interviewed and asked to give information for that report.

24  When you do that, you are entitled to and you should have your

25  attorneys present when you talk to probation.  Okay?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  You and your attorneys will be able to

3    read the presentence report before your sentencing.  And you

4    and your attorney and the government's attorney will be given

5    the opportunity to address the Court on your behalf and the

6    government on its behalf at your sentencing hearing before I

7    impose sentence.

8       Mr. Vine, date and time for sentencing.

9          THE CLERK:  March 8th, your Honor.

10         THE COURT:  Date and time for sentencing is set for

11   March 8, 2016.  I'm going to set it for 9:15.  Depending on

12   how much material I receive, I will reserve the right as to

13   whether I'm going to specially set this or not.  For now,

14   we'll keep it on March 8, 2016, at 9:15.

15      Mr. Teausant will remain in the custody of the United

16   States Marshal pending judgment and sentence.

17      We'll see you in March.

18         MR. GALLOWAY:  Thank you, your Honor.

19         THE COURT:  Thank you.

20         MS. HOBLER:  Your Honor.

21         THE COURT:  Yes.

22         MS. HOBLER:  Just procedurally, I have not been to

23   sentencing in front of you in quite some time.  What is your

24   preference on sentencing briefing?

25         THE COURT:  You can brief all you want.  Just get it

1  to me so I have enough time to read it.

2  MS. HOBLER:  That's my question.  Do you take it a

3  week in advance?

4  THE COURT:  I'd like it in longer than a week in

5  advance.  But if it's less than a week in advance, then it

6  makes it more difficult for me to review it.  And if it's

7  going to be significant, which I anticipate in this case, you

8  might want to get it to me a little earlier.  If I don't have

9  enough time, sentencing is going to get continued.

10  MS. HOBLER:  Very good, your Honor.  I'll consult

11  with the defense and make sure you have plenty of time.

12  THE COURT:  Okay.  Thank you.

13  MR. SCOBLE:  Thank you.

14  MS. HOBLER:  Thank you.

15  (Proceedings were concluded.)

16

17

18

19

20

21

22

23

24

25

1          I certify that the foregoing is a correct transcript

2     from the record of proceedings in the above-entitled matter.

3

4

5                              /s/ Kelly O'Halloran

6                              KELLY O'HALLORAN, CSR #6660

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25