IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
BEFORE THE HONORABLE JOHN M. MENDEZ, JUDGE

---o0o---

UNITED STATES OF AMERICA,

      Plaintiff,

Vs.                                    CASE NO. 2:14-CR-087 JAM
                                       APPEAL NO. 16-10258

NICHOLAS MICHAEL TEAUSANT,

      Defendant.
_____/


REPORTER'S TRANSCRIPT OF PROCEEDINGS
RE:  JUDGMENT AND SENTENCING
TUESDAY, JUNE 7TH, 2016, 9:15 A.M.


| For the Government: | OFFICE OF THE UNITED STATES ATTORNEY |
| | 501 I Street, Suite 10-100 |
| | Sacramento, California  95814 |
| | BY:  JEAN HOBLER, AUSA |
| | BY:  JASON HITT, AUSA |
| | |
| | U.S. DOJ, NATIONAL SECURITY DIVISION |
| | 950 Pennsylvania Avenue, NW |
| | Washington, DC  20530 |
| | BY:  DAVID SIGLER, NSD Trial Atty. |
| | |
| For Defendant: | OFFICE OF THE FEDERAL DEFENDER |
| | 801 I Streeet, 3rd Floor |
| | Sacramento, California  95814 |
| | BY:  BENJAMIN GALLOWAY, Asst. F.D. |
| | BY:  RACHELLE BARBOUR, Asst. F.D. |

Reported by:  CATHERINE E.F. BODENE, CSR #6926, RPR
              Official Court Reporter USDC, 916-446-6360
              501 I Street, Room 4-200
              Sacramento, California  95814
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

2

1        SACRAMENTO, CALIFORNIA, TUESDAY, JUNE 7TH, 2016, 9:15 A.M.

2                              ---o0o---

3              THE CLERK:  Criminal S-14-87, United States versus

4    Nicholas Teausant.

5              MS. HOBLER:  Good morning, Your Honor.  Jean Hobler

6    for the United States.  With me appearing also for the

7    United States is Jason Hitt and Trial Attorney Andrew Sigler of

8    the National Security Division.

9              MR. GALLOWAY:  Good morning, Your Honor.  Benjamin

10   Galloway and Rachelle Barbour with Nicholas Teausant who is

11   present in court in custody.

12             THE COURT:  Good morning.

13       This is the time and place we have set for the

14   pronouncement of judgment and sentencing.  Mr. Teausant was

15   here on December 1st, 2015.  At that time he entered a guilty

16   plea.  It was an open plea to the charge in the indictment

17   which charged him with Attempting to Provide Material Support

18   and Resources to a Foreign Terrorist Organization in violation

19   of 18 U.S.C. Section 2339B(a)(1).

20       As I indicated, there was no written plea agreement in this

21   case.  It is an open plea.

22       The matter was referred to probation for a presentence

23   evaluation and report.  The court has received, read and

24   considered the report from probation that was filed on April

25   26, 2016, at Docket 65.

1      In addition to a very thorough and lengthy report, there

2  were a number of attachments to the report which the court has

3  considered, including the informal objections and responses by

4  probation to those informal objections that were filed by both

5  the defense and the government.

6      There were also three mental health reports from a

7  Dr. Stewart dated December 2nd, 2014, from the Bureau of

8  Prisons, and their forensic psychologist dated March 24th,

9  2015, and then from Natasha Khazanov, dated December 31st,

10  2015.

11      Formal objections were filed as well.  We'll take those up

12  in a second.  In addition to the presentence report, the court

13  has received from both sides extensive briefing in this case,

14  the most extensive briefing I think I have seen in a criminal

15  case, including not only the objections and responses to

16  objections to the presentence report, but a sentencing

17  memorandum with numerous attachments filed on behalf of

18  Mr. Teausant, the government's response to the defense

19  sentencing memorandum, the government's own sentencing

20  memorandum, and the defendant's response to the government's

21  sentencing memorandum.  And then there were ten letters of

22  recommendation that were forwarded to me that I have also

23  considered.

24      So I have reviewed all that has been presented to me.

25  Again, the level of detail and the briefing is excellent, and

1    the court appreciates it.

2        There are three different recommendations that have been

3    made in terms of what the parties and probation believe is the

4    appropriate sentence in this case.  I've considered those, as

5    well as the sentencing guidelines, and obviously the 3553(a)

6    factors.

7        In the presentence report, I want to take up, Mr. Scoble

8    (sic), your objections on behalf of Mr. Teausant to the

9    guideline calculation first, which is, as everyone agrees, a

10   starting point in this case.

11           MR. GALLOWAY:  I'm sorry.  Mr. Scoble is no longer

12   with us.

13           THE COURT:  I'm sorry, Mr. Galloway.

14       Objections raised by Mr. Galloway on behalf of

15   Mr. Teausant, and starting with the formal objections to

16   paragraphs 49 and 50.

17       While it is not an objection to the base offense level

18   per se the number, it is an objection to which guideline should

19   apply in this case, which guideline should cover the violation

20   of 18 U.S.C. Section 2339B in this case.

21       The disagreement is whether the court should apply the

22   Section 2X1.1 guideline for attempts not covered by another

23   offense guideline, or the Section 2M5.3 guideline for providing

24   material support or resources to designated foreign terrorist

25   organizations.

1        Defendant has argued that 2X1.1 applies.  Government has

2  argued and probation has also supported this in its own reply

3  to informal objections that it believes that the 2M5.3

4  guideline applies.

5        The court finds in this case, again, it doesn't affect the

6  number, it would affect, as argued by the defense, the

7  possibility of another three-level decrease.  But the court

8  finds that the applicable guideline is, in fact, the 2M5.3

9  guideline.

10        The defendant did plead guilty to attempting to provide

11  material support and resources to a foreign terrorist

12  organization, a violation of that code section.  The Section

13  2339B does prohibit, quote, "knowingly providing material

14  support or resources to a foreign terrorist organization or

15  attempting or conspiring to do so.

16        Section 2X1.1 applies to attempts not covered by a specific

17  offense guideline.  The 2X1.1 states that:

18        (Reading:)

19        When an attempt is expressly covered by another offense

20        guideline section, the other guideline section should

21        apply.

22        (Reading concluded.)

23        The application note to 2X1.1 lists certain attempts that

24  are expressly covered by other offense guidelines.  While 2M5.3

25  is not included on that list, that is not the end of the

1    discussion.

2        Section 2X1.1 states that the base offense level for an

3    attempt is the base offense level from the guideline for the

4    substantive offense plus any adjustments from such guidance for

5    any intended offense conduct that can be established with

6    reasonable certainty.

7        2X1.1(b)(1) allows for a three-level reduction, as we just

8    mentioned, if the defendant was convicted of an attempt to

9    commit a crime rather than the completed crime itself.

10       Sentence Guideline 2M5.3 applies to the crime of providing

11   material support or resources to designated foreign terrorist

12   organizations.

13       The commentary under Section 2M5.3 does list specifically

14   this statute, 2339B of Title 18 as one of the related statutory

15   provisions.  And the base offense level, as indicated in the

16   probation report, and all sides agree, is 26.

17       2M5.3, however, does not provide for a three-level

18   reduction for attempts of the crime.

19       In the Ninth Circuit the subjective guideline and not

20   Section 2X1.1 applies to "attempt" crimes that are specifically

21   included in the statute defining the offense.

22       That's United States versus Hernandez Franco, a Ninth

23   Circuit case from 1999.  This is true even if the substantive

24   guideline is not listed in Application Note 1 to 2X1.1.

25       Though the defendants have argued that because 2M5.3 is not

1   listed under Application Note 1 to the 2X1.1 as a guideline

2   that expressly covers attempts that the court should apply the

3   2X1.1 and not Section 2M5.3, that can be found in the

4   defendant's formal objections that have been filed in this

5   case, the government in response to defendant's formal

6   objections has argued the 2M5.3 section applies even if it is

7   not listed under Note 1 because the statute of conviction

8   specifically includes attempt crimes.

9        This is the government's response at page 2.  The defendant

10  does not address Hernandez Franco which is directly applicable

11  here and since 2339B does prohibit attempts to provide material

12  support, the court finds -- overrules defendant's objections

13  and finds that the base offense level is 26 under Section

14  2M5.3.

15       I'm not sure that -- Okay.  Probation does cite to that in

16  the Presentence Report.

17       But that means that the three-level reduction is not

18  available to the defendant, and defendant's request for a

19  consideration of the three-level reduction is also overruled.

20       The next objection is to paragraph 50 which is the Specific

21  Offense Characteristics.  Probation included a two-level

22  increase under Section 2M5.3(b)(1)(E).

23       That section states that:

24       (Reading:)

25       If the offense involved the provision of funds or other

1      material support or resources with the intent, knowledge or

2      reason to believe they are to be used to commit or assist

3      in the commission of a violent act, then the guideline

4      should be increased by two levels.

5      (Reading concluded.)

6      Material support or resources includes "personnel, one or

7  more individuals who may be or include oneself."  That is at

8  sentencing guideline 2M5.3, Note 1, which defines material

9  support or resources in the guidelines that the court has

10  reviewed.

11      Probation did apply the two-level enhancement to the

12  defendant arguing -- not arguing -- reasoning that:

13      (Reading:)

14      The defendant intended to apply his military training to

15      assist ISIS by fighting with ISIS and teaching ISIS

16      soldiers how to shoot properly.

17      (Reading concluded.)

18      The defendant objected to the two-level enhancement arguing

19  that it should not apply to Mr. Teausant because he never

20  provided any funds, support or resources, and the guideline

21  focuses on the actual provision of funds or support in the

22  past.

23      The defendant has argued that because Section

24  2M5.3(b)(1)(E) uses a past tense word "involved," that the

25  plain text of the guideline provision means that the provision

1    of resources must have already happened.

2         Defendant has also argued that he didn't have any military

3    training or special skills to use in fighting or training

4    others that he could have provided to a terrorist organization.

5         The government's response argued that 2M5.3(b)(1)(E) uses

6    the past tense because the guidelines assess the attempted or

7    completed crime, not future behavior.  And the government also

8    points out that substantially all the language in the

9    guidelines is in the past tense.

10        While there are few cases that discuss the application of

11   2M5.3(b)(1), there are two cases the court has reviewed that

12   does provide some guidance.

13        In United States versus Banol-Ramos, a Second Circuit case,

14   and United States versus Nayyar, N-a-y-y-a-r, a Southern

15   District of New York case, both cases from 2013, the courts in

16   those cases did apply the two-level enhancement after the

17   defendants had pled guilty to conspiracy to provide material

18   support.

19        A conspiracy-like attempt is an inchoate offense.  The fact

20   that the Banol-Ramos and Nayyar courts imposed the two-level

21   enhancement implies that 2M5.3(b)(1) applies even if the crime

22   of providing material support was not actually completed.

23        The court does find, as argued by the government in its

24   opposition, that under 2M5.3(b)(1), the two-level enhancement

25   should and was properly applied here as well.

1     So again, the defendant's objection to the two-level

2     enhancement is overruled.

3         The defendant's offense did include him getting on a train

4     to Canada, to taking steps to actually complete the crime.

5     Although he was stopped obviously at the border, his intent was

6     to provide himself to help fight alongside a terrorist group in

7     Syria.

8         Other courts have applied this two-level enhancement under

9     the inchoate offense of conspiracy.  And again, defendant's

10    argument that the guideline's use of the past tense word

11    "involved" indicates the Sentencing Commission's intent should

12    be not to apply the enhancement to the crime that was

13    incomplete is not persuasive to this court.

14        There is no indication that the Sentencing Commission did

15    not intend for this enhancement to apply to "attempts," and use

16    of the past tense and pointing that out as the reason for not

17    applying the enhancement, as I just indicated, is not

18    persuasive to the court or, as the government argues, is

19    unavailing.

20        Again, the court adopts the government's conclusion in its

21    opposition that Mr. Teausant did, in fact, attempt to provide

22    himself to ISIS in order to engage in violence.  And the plain

23    language of Section 2M5.3(b)(1)(E) applies, resulting in the

24    two-level increase.

25        The next objection is to paragraph 51, page 18, the

1   application of the 12-level increase under Section 3A1.4.

2       Section 3A1.4 of the guidelines provides an upward

3   adjustment for federal crimes involving terrorism.  Under this

4   guideline, quote, "If the offense was a felony that involved,

5   or was intended to promote a federal crime of terrorism," close

6   quote, the defendant's base offense level must be increased by

7   12 levels, but if the resulting offense level is less than a

8   level 32, then it would be increased up to level 32.

9       The adjustment also indicates that in each case the

10  defendant's criminal history category shall be a category VI.

11  That also was applied as well in the presentence report to the

12  guideline calculation by probation.

13      Application Note 1 to Section 3A1.4 states that a federal

14  crime of terrorism is defined in 18 U.S.C. Section 2332b(g)(5).

15  Section 2332b(g)(5) defines a "federal crime of terrorism" as

16  an offense that:

17      (Reading:)

18      ...is calculated to influence or affect the conduct of

19      government by intimidation or coercion, or to retaliate

20      against government conduct.

21      (Reading concluded.)

22      That is listed in Section 2332b(g)(5)(B).

23      The defendant's statute, to which he entered a guilty plea,

24  Section 2339B is, in fact, one of the crimes listed under

25  2332b(g)(5)(B) so that element has been satisfied.

1    So the terrorism enhancement -- the terrorism enhancement,

2    this 27-level increase, does not hinge upon the defendant's

3    ability to carry out specific terrorist crimes or the degree of

4    separation from their actual implementation.  Rather, it is the

5    defendant's purpose that is relevant.  And if that purpose is

6    to promote a terrorism crime, then the enhancement is

7    triggered.

8    That is an Eleventh Circuit case, United States versus

9    Mandhai, M-a-n-d-h-a-i, 2004.

10    The government, again, objects to the defendant's position

11    that that increase is not appropriate and opposed the

12    defendant's objection to the increase.

13    Defendant has raised two legal and numerous practical

14    arguments as to why he believes the terrorism adjustment should

15    not be applied.

16    The two specific legal arguments are that his offense does

17    not, in fact, meet the criteria listed in Section 3A1.4, and

18    that the court should apply the reasoning of United States

19    versus Kimbrough to this specific enhancement.

20    The defense has also argued that if I do find that the

21    enhancement applies, and therefore resulting in a criminal

22    history VI, that I should then depart given that there is no

23    criminal history on the part of this defendant or -- and we'll

24    get to this -- under 3553, grant a variance given that there is

25    a lack of criminal history and that the level VI would

1    overstate the defendant's criminal history.

2        The government has argued that 3A1.4 does apply because the

3    defendant did, in fact, intend to influence or affect the

4    conduct or to retaliate against the Syrian government.

5        The government has cited to several pieces of evidence in

6    this case which indicate that the defendant sustained animosity

7    to the Syrian regime in social media postings.

8        For example, defendant states things such as:

9        (Reading:)

10       Kill all of Bashars, B-a-s-h-a-r-s, backers.

11       (Reading concluded.)

12       Bashar al-Assad is and was at the time the president of

13   Syria.  The government has argued that Mr. Teausant intended to

14   influence or retaliate against a government as documented by

15   his pre-arrest statements, his arrest interview, the nature of

16   the group he attempted to join, and his fixation on violent

17   opposition in the Syrian government both before and after his

18   arrest.  As a consequence, the government concludes 3A1.4

19   applies.

20       The social media posts and statements that have been

21   identified in the presentence report and in the government's

22   briefs do, in fact, indicate that the defendant wanted and, in

23   fact, attempted to travel to Syria to retaliate against the

24   president of Syria and the Syrian government.

25       Defendant has argued frequently throughout his sentencing

1    memorandum that he did not actually have the means to get to

2    the Middle East, he didn't have the ability, that he would have

3    failed, and therefore he could not have supplied material

4    support to any terrorist organization.

5        But, again, the fact that the defendant did not have the

6    ability, even if I accepted that argument, to materially

7    support terrorism, is not the issue as the court pointed out in

8    Mandhai.

9        The defendant's purpose is what is at the center of this

10   enhancement.  It is what matters.  And the evidence does

11   support and demonstrate that the defendant's purpose in

12   traveling through Canada was ultimately to get to Syria to

13   fight against the government there.  And the court finds that

14   the defendant's conduct would warrant application of the

15   terrorism adjustment provided by Section 3A1.4.

16       In terms of the argument regarding Kimbrough, again the

17   court was not persuaded by the argument in which the -- which

18   was raised by the defendant that the court should consider

19   exercising its discretion to vary based on a policy

20   disagreement with the guideline as the court did in Kimbrough

21   which involved the disparity between crack and powder cocaine.

22       The court in this circumstance, involving this crime,

23   refuses to exercise that discretion or find that that

24   discretion should be applied in this case.

25       In terms of the practical arguments raised by the defendant

1    against the application of the adjustment itself, those

2    practical arguments are better made as 3553(a) arguments as

3    opposed to guideline calculation arguments.  And therefore, the

4    court is not persuaded by those.  So the objection to paragraph

5    51 is overruled as well.

6        Paragraph 64, page 19, that objection is overruled as well.

7    That's the overstatement of criminal history.  In terms of the

8    guideline calculation, the court believes it is compelled under

9    the guidelines to find that a criminal history category VI does

10   apply, which would not, however, preclude the defendant from

11   arguing under 3553(a) that his criminal history is overstated

12   and the court should consider a variance.

13       I believe those are all the formal objections to the

14   presentence report.  They're overruled.  The court adopts the

15   calculation in the presentence report with respect to the

16   sentencing guidelines and specifically finds in this case,

17   therefore, that after adjustments, including those for

18   acceptance of responsibility, the total offense level is 37,

19   the criminal history category is a Roman numeral VI.

20       Under those circumstances the guideline range would

21   normally be 30 years to life, but this is a statute that

22   carries a mandatory -- not a mandatory -- a maximum sentence of

23   15 years.  And therefore, as a matter of law, the 15-year

24   maximum sentence becomes the guideline range, and the court so

25   finds with respect to simply the guideline calculation, the

1    starting point in this sentencing hearing.

2         Any other corrections, typos, errors that need to be made?

3         Actually, the government -- I take it back.

4         The government did file a motion to correct the presentence

5    investigation report with respect to paragraph 16.

6         I'm not sure if that was made.  Ms. Hobler, was it made?

7              MS. HOBLER:  I don't know if that correction has been

8    made or not, Your Honor.  I do not have a copy of the PSR post

9    the one that was filed.

10             THE COURT:  Okay.  So it references a November 7th,

11   2013, conversation between the UCE and Teausant.  That

12   conversation did not occur on November 7th, 2013, and was not

13   between the UCE and Teausant, but was between Teausant and the

14   CHS.

15        So it would be helpful if you had the PSR.

16        You want me to correct that to read that "On November 7th,

17   2013, Teausant met with the CHS"?

18             MS. HOBLER:  I think --

19             THE COURT:  Or "the first time at a restaurant in

20   Stockton."

21        Is that inaccurate still?

22             MS. HOBLER:  No.  The language is the UCE asked

23   Teausant:

24        (Reading:)

25        Is there anything else you want me to tell my mentor that I

1    haven't already told him that I don't know about you?

2    Teausant replied:

3        My favorite color is turquoise.  My favorite animal is a

4        penguin.  I love penguins.

5        (Reading concluded.)

6        That entire language should be shifted to a later

7    conversation that I -- a later paragraph that I believe I

8    reference in the objections.

9            THE COURT:  Okay.  So did Mr. Teausant meet with the

10   UCE on November 7th?

11           MS. HOBLER:  Yes.  The remainder of the paragraph is

12   accurate.  It is just that that particular conversation

13   happened between two other people at a different time.

14           THE COURT:  All right.  I actually listened to it.  I

15   think, Mr. Galloway, you submitted a recording for me?

16           MR. GALLOWAY:  That's correct, Your Honor.

17           THE COURT:  Okay.  So that portion should be in a

18   different paragraph.  So stopping with the word "penguins"?

19           MS. HOBLER:  "Penguins," yes.

20           THE COURT:  So that portion should be moved to what

21   paragraph?

22           MS. HOBLER:  Paragraph 28, Your Honor.

23           THE COURT:  The court has indicated that on its

24   presentence report, and I'll order that that be corrected.

25      Okay.  So that correction has been made.

1    Any other corrections that I need to make?

2         MS. HOBLER:  No, Your Honor.

3         THE COURT:  Mr. Galloway, same question to you?

4         MR. GALLOWAY:  No, Your Honor.  Thank you.

5         THE COURT:  Okay.  All right.  The court will adopt

6    the findings in the presentence report, in particular the

7    guideline calculation as so found by probation.

8    Any legal cause why we should not proceed with sentencing?

9         MS. HOBLER:  No, Your Honor.

10        MR. GALLOWAY:  No, Your Honor.

11        THE COURT:  I've obviously read the significant amount

12   of material that has been provided to the court.  Each side has

13   a right of allocution, as well as Mr. Teausant himself.

14   I'll begin with the government.  Anything further that you

15   want to add or any arguments you want to respond to that you

16   believe have not already been responded to with respect to the

17   appropriate sentence in this case?

18        MS. HOBLER:  Yes, Your Honor.  One kind of

19   housekeeping matter on the guidelines before I start with that.

20   The terrorism enhancement, by its very terms, has a fairly

21   extreme impact on the sentence in this case.  So under Ninth

22   Circuit law, I don't think either party raised this in

23   briefing, under Ninth Circuit law the general standard of proof

24   is preponderance of the evidence, but I think clear and

25   convincing would apply.

1    So I'm just asking the court to make a finding under clear

2    and convincing on that particular guideline.

3         THE COURT:  Okay.  And the court so finds.

4         MS. HOBLER:  Thank you.

5    As to the rest of the government's argument, I would like

6    to address just a few issues from the defense's final brief in

7    this matter.  I won't go into detail as I think the details are

8    red herrings that distract from the purpose of this hearing.

9         THE COURT:  Is the final brief the response to your

10   sentencing memorandum?

11        MS. HOBLER:  Yes, Your Honor.

12        THE COURT:  Go ahead.

13        MS. HOBLER:  The defense takes a number of shots at

14   the government suggesting that we have a motive to make

15   Mr. Teausant look dangerous.  The government has a mission and

16   motive to protect the public, as does this court.  It also has

17   a mission to recommend an appropriate sentence based on the

18   guidelines and all of the sentencing factors under Section

19   3553, not just one or two.

20   If our only focus was on making Mr. Teausant look

21   dangerous, our recommendation in this case would certainly not

22   be less than 15 years.

23   It is easy in hindsight to pick and choose pieces of

24   discovery and say that they show the government is overstating

25   the defendant's dangerousness.

1    In the midst of an investigation, we don't have that

2    luxury.  And contrary to popular belief, we also do not have

3    unlimited resources to expend on every investigation.

4    Decisions about where to expend the government's resources

5    are based on a number of factors, including how much of an

6    established relationship we have with the CHS and UCE and the

7    defendant, which might stand in for eyes on the defendant; how

8    much of a sense of where the defendant's intentions are focused

9    we have; and whether or not there are other more urgent threats

10   requiring resources that would otherwise be spent on the

11   defendant.

12   It is easy to pick at those decisions in hindsight, but the

13   reality is that the FBI makes those decisions every day and did

14   so in this case.

15   The government, I would point out, however, is not the only

16   actor who has looked at all the evidence in this case and come

17   to a conclusion about the seriousness of the defendant's crime

18   and the appropriate sentence in this case.

19   The probation officer had all of discovery and additional

20   materials from the defense.  She received the defense's

21   informal objections which asked her to include in the PSR a

22   number of nonoffense-related items, like postings about Barney.

23   She include them all.  She's looked at the evidence as an

24   employee and officer of this court and presented to the court

25   her findings recommending that Mr. Teausant be sentenced to 15

1    years of imprisonment, as well as ten years supervised release.

2        It is not just the government who, having reviewed all of

3    the discovery in this case, thinks Mr. Teausant's crimes are

4    serious and that he presents a danger to the public.

5        This is likely based in part on information in discovery

6    not specifically called out by the government in a sentencing

7    briefing, but in the exhibits, including the CHS's observation

8    from his conversation with Mr. Teausant on October 20th, 2013,

9    that "Mr. Teausant does not have a clear ideological belief or

10   cause and seems more focused on fighting and violence."

11       That's in Government's Exhibit 11.D-1, page 3.

12       And that brings me to the last point I want to raise

13   regarding the defense's final briefing.  They cite a number of

14   cases to suggest that Mr. Teausant's behavior is less serious

15   than that of others who have been involved in ISIS.  But they

16   ignore that those whose behavior is more serious have also been

17   charged with more serious crimes, with higher statutory

18   maximums, including, in some cases, life terms of imprisonment.

19       As to the only four cases cited by the defense that have

20   gone to sentencing, only three of those are charged under

21   2339B.  All three of those pleaded, and all three of those

22   defendants were sentenced to 15 years.  Two of them have life

23   terms of supervised release.

24       There is no question that the defense thinks the nine-year

25   sentence is inappropriate in this case.  I guess reasonable

1    minds can disagree with the recommendation in either direction.

2    Certainly there are those who think anything less than 15 years

3    is appropriate.  And the defense thinks what is essentially a

4    time served sentence is right, a recommendation the government

5    thinks is entirely inappropriate when all the 3553 factors are

6    considered.

7        But the government has articulated its reasons for its

8    recommendations and the evidence that supports those reasons in

9    its briefing.  And with that, Your Honor, absent any questions

10   from the court, we're prepared to submit the matter.

11            THE COURT:  All right.  Thank you.

12       Mr. Galloway.

13            MR. GALLOWAY:  Your Honor, thank you.

14       The government is asking for nine years based on things

15   Nick said two-and-a-half years ago.  They're arguing to

16   dramatically increase his sentence for words in the cluttered

17   mind of "Assad Teausant bigolsmurf."

18       They want to put him away because of what they say he might

19   do.  The government argues that he may pose a threat, but the

20   government discontinued surveillance weeks before his arrest.

21   It's a stretch now to say that he's a threat.

22       He was surveilled nearly around the clock at times, and he

23   never did anything.  He was offered explosives for domestic

24   action by the FBI, and he declined.

25       Your Honor, as you know from our brief, we believe this

1    case is 99 percent talk and 1 percent a train ride, but even

2    that was done poorly.

3        He didn't dress as a college student as he said he would to

4    slip across the border, he dressed in camouflage fatigues and

5    boots and a neck beard and a kufi skull cap.  And he told the

6    border guards that he was Muslim and he was going to visit

7    Muslim friends and teach each other things.

8        It begs the question:  Was he not trying to get caught?

9        It sort of seems that way when he tells the FBI agent that

10   he was expecting to talk with them because he wasn't quiet

11   about his views.

12       This case is completely mitigated in every respect.  ISIS

13   then wasn't ISIS now.  Nick didn't harm anyone or try to harm

14   anyone.  He declined to engage in a domestic act.  He didn't

15   set up any fake bombs or purchase weapons.  He didn't fund or

16   supply anyone.

17       The government, in arguing for this -- the category VI

18   terrorism enhancement talks about how he was hostile to Bashar

19   al-Assad, but even the U.S. Government on December 11, 2012,

20   recognized the opposition as the legitimate representative of

21   the Syrian people instead of Bashar al-Assad.  So arguably it

22   was open season on Assad.

23       That doesn't make him a terrorist.  If it did, that would

24   make nearly everyone in this country a terrorist supporter as

25   no one in this country supports Assad.

1    He had a completely unstable youth.  He has cognitive and

2    social impairments that have responded favorably to treatment.

3    He's now on the right medication and compliant.

4    Two doctors, Dr. Stewart, and also the BOP psychiatrist,

5    diagnosed him as schizophrenic.  It is easy to miss.  It's at

6    page 14 of the BOP psychologist's report.  We nearly missed it

7    completely.  So we have two doctors diagnosing him as

8    schizophrenic.

9    And again, he's responded well to medication.  And I say

10   that as somebody who has known him now for 27 months or darn

11   near.  We've seen a profound difference, Your Honor, in Nick

12   Teausant.

13   Since he came back from MDC on medication, we've seen

14   somebody who has grown and matured before our eyes.  He's

15   grounded.  He's coherent.  He's focused.  He's present, and

16   he's realistic.

17   That's a far cry from where he was when we declared a doubt

18   about his competency.  I attribute some of that to medication.

19   And I note that every report indicates that he's compliant with

20   medication.  And it's also somewhat due to maturing, I think.

21   He's, you know, now 10 percent older than he was when the case

22   came in.

23   Your Honor will hear that from Mr. Teausant, and I'm sure

24   Your Honor has already seen it in the profoundly supportive

25   letters of people who have known him his entire life and have

1    seen that change, seen the dark side of Nick Teausant when his

2    symptoms started appearing.  That's documented in the PSR.  And

3    then they've seen the return to the good, spirited kid that he

4    was, that good nature, since he's been on those meds.

5         And I would note, Your Honor, that nearly the entire left

6    side, as the court sees of this courtroom, is filled with

7    supporters, overflowing to the other side.  People are here who

8    love him and want to support him.

9         He shouldn't be sentenced for what was in his untreated

10   head 27 months ago.  He should be sentenced for who he is as he

11   stands here today.  Congress could have included a mandatory

12   minimum, but they didn't.  And that suggests that at least

13   someone, some person who committed this crime should be towards

14   the low end of the range of zero to 15.

15        What less could Nick Teausant have done to qualify for a

16   position toward the low end?

17        And yes, he's not a category VI.  He's the purest category

18   I.  He's never even had a parking ticket.

19        So to treat him as that, for the guidelines to calculate a

20   range of 360 to life, shows just how irrelevant they are in

21   this analysis.

22        The government suggests that Nick Teausant is a problem.

23   We would submit he's not a problem under supervision.  He's the

24   kind of person who would benefit under the guidance of a

25   positive mentor, someone he can talk to, like a probation

1    officer.

2        When he was apprehended, he wasn't crushed because his

3    dreams of going overseas were foiled.  Instead, he bonded with

4    the FBI agents and talked for hours and thought it was cool

5    when he was allowed to wear an FBI jacket.

6        Your Honor, on supervision -- and we're recommending a

7    lengthy term, as the court knows, because of his youth.  On

8    supervision, he'll be at home with his dad and stepmom.

9        His dad's a graduate student who studies from home and can

10   keep an eye on him.  His stepmom is a doctor, the same doctor

11   who called the Seattle Port Authority.  When she feared he was

12   going to be taken across the border and abused by terrorists,

13   she reported him.  That is, of course, because he was tweeting

14   and using social media along the way.

15       On supervision he'll be subject to warrantless search and

16   seizure and substance abuse treatment testing and mental health

17   treatment.  We are in support of the government's proposed

18   condition that requires med compliance.

19       He'll have extremely limited or perhaps no access to a

20   computer.  The computer, if he is allowed one, will be subject

21   to inspection.  His employer will have to be notified.

22       There are travel restrictions.  There are work, school and

23   training requirements.  There are requirements that he not

24   associate with felons or criminals, like the ones he would be

25   surrounded by in the Bureau of Prisons, and that he not

1   associate with anyone engaging in or communicating about

2   terrorism.  He would be subject to unannounced visits.  And

3   again, we're in support of the conditions the government

4   endorses.

5       So he'll have a bedroom in a home with a supportive family

6   and people who love him and will help him reintegrate into

7   society.

8       The problem in this case, is what happens with a lengthy

9   term of imprisonment.  The way the PSR is written, it virtually

10  assures, it certainly encourages the BOP to consider housing

11  Nick in a communication management unit, a CMU.  And we cited

12  in our brief -- in our opening brief at page 39 the strict

13  restrictions on all forms of communication with the outside

14  world.

15      And as noted in page 23 of our response, the first factor

16  BOP looks for in considering whether or not to put him in this

17  semi-isolation is whether or not he's been convicted of an

18  offense like this.

19      So with no contact and limited calls and limited contacts

20  with other inmates, Nick Teausant won't do well.  That won't

21  help our situation.  Because he's going to be released one day.

22  The question is how do we release him in a way that works and

23  helps.

24      What Nick needs and what Nick hasn't had in 27 months is a

25  hug from his parents.  That's what he needs.  He needs support.

1    And I'm not suggesting a time served sentence is appropriate.

2    I'm suggesting one that involves his release in a couple of

3    months.  It will give everybody time to set up.

4        And for that reason we met with probation officials months

5    and months ago to discuss a release plan.  So this is not going

6    to be a surprise to anybody.

7        Your Honor, I believe every aspect of the 3553 analysis

8    favors a sentence in the lower range of what's before the

9    court.  And we're asking the court to impose that sentence.

10        Thank you.

11            THE COURT:  All right.  Thank you.

12        Mr. Teausant, this is your opportunity to address the

13    court.

14            THE DEFENDANT:  Yes, Your Honor.  Bear with me.  I'm a

15    bit nervous.  If I stutter, please understand.

16            THE COURT:  I understand.

17            THE DEFENDANT:  Thank you.

18        Your Honor, thank you for allowing me to speak with you.  I

19    want to say first I realize the pressure you're under.  I know

20    this is a tough decision, and I know you'll listen to both

21    sides.

22        I want to say I'm very sorry for what I have done.  I want

23    to be part of a better cause, higher than myself, something to

24    belong to, to not be my ordinary self.

25        I thought that no one would miss me.  I didn't feel like I

1   was worth anything.  I didn't feel like my life had any

2   purpose.  I was thinking in the moment, not in the future.

3       I wish I knew then what I know now, that it is more

4   complicated and that I need to stay out of it.  It is not good

5   to get involved in something I know nothing about.

6       Now I know I don't have to prove myself.  I know I'm

7   special to my family.  I understand now that my family is

8   trying to protect me.  And I was wrong, and I apologize to

9   society and to my family.

10      All the time in jail has been regrettable, but it was good

11  for me.  I had a lot of time to think and was forced to mature.

12      This time medication has calmed me down and helped me to

13  mature.  I understand now I can't just make a decision on my

14  own.  I need to consult with people.  I need to think about

15  other people.  If I had, I would have stayed with my mom and

16  daughter, and I would have listened to my family.

17      I'm still struggling to figure out who I am, what my role

18  is in the world.  I'm taking time to discuss religion in a

19  positive way with another inmate who found faith.

20      I meet with a pastor named Bill who allows me to discuss my

21  testimony, allows me to share scripture, allows me to ask other

22  brothers to stand up and make a better choice for their life.

23  It really impacts me, and it really impacts them.

24      My stepmom Alicia sends me inspiration articles and

25  self-help books so when I get out I can be ready.

1    I look forward to a new job, training, college, counseling

2   and psychological help with the aid of my probation officer and

3   my stepmom and my father in a new productive community.

4        Thank you for listening, Your Honor.

5             THE COURT:  Thank you.

6             MR. GALLOWAY:  Your Honor, I would just note Pastor

7   Bill is also here in the courtroom in support of

8   Mr. Teausant.

9             THE COURT:  All right.  Anything further from either

10  side?

11            MS. HOBLER:  Your Honor, I think the only thing I

12  would like to respond to with the defense is that I think

13  they're mischaracterizing what the psychiatric report from BOP

14  said.  And that is more expressly discussed in Document Number

15  653, the government's analysis of that express point.

16            THE COURT:  Also for the record, in paragraph 92 of

17  the presentence report, the report indicates as follows:

18       (Reading:)

19       The government and defense agree to the following summary

20       of the defendant's mental health status:

21       Although three mental health evaluations have not led to a

22       definitive mental health diagnosis, evaluators agree the

23       defendant suffers from mental health issues, including mild

24       cognitive impairments and moderate social impairments.

25       Those impairments have responded favorably to medication,

1        although testing has suggested an organic basis for the

2        defendant's impairments.  The parties agree the defendant's

3        mental issues do not constitute a defense to his crime.

4        The defense intends to address defendant's mental health

5        issues under Title 18 United States Code Section 3553(a) at

6        sentencing.

7        (Reading concluded.)

8            And those have, in fact, been addressed in the briefs

9     submitted by the defendant.

10           MR. GALLOWAY:  Your Honor, if I could respond?

11           THE COURT:  Go ahead.

12           MR. GALLOWAY:  Just for the record, at Document 658,

13     page 14 of 19 in the BOP report, it does say:

14        (Reading:)

15        Following this assessment, based largely on the defendant's

16        self-reported symptoms and psychiatric history, medical

17        staff -- this is BOP medical staff -- opined a psychiatric

18        diagnosis of Schizophrenia, Paranoid type and Anxiety

19        Disorder.

20        Mr. Teausant was prescribed Zyprexa, an antipsychotic

21        medication, to treat mental health symptoms.  Consultation

22        with health services staff indicated the defendant was

23        largely compliant with the prescribed medication regimen.

24        (Reading concluded.)

25        So we can disagree about the quality or the value of that

1    report, but that is a schizophrenia diagnosis.

2          THE COURT:  But you also agreed with the paragraph in

3    the presentence report, as well?

4          MR. GALLOWAY:  I don't think they are inconsistent.

5          MS. HOBLER:  The only other thing I would note --

6          THE COURT:  Go ahead.

7          MS. HOBLER:  -- is that the proposed condition that

8    Mr. Galloway was discussing has been provided to both

9    Mr. Galloway and Miss Morehouse, but has not been provided to

10   the court.

11         THE COURT:  Do you want to provide it to me?

12         MS. HOBLER:  Here it comes.

13         THE COURT:  Thank you.

14       (Document handed to the court.)

15       All right.  The matter having been submitted to the court

16   for judgment and sentencing, the court is prepared to impose

17   sentence in this case as follows:

18       The guidelines are, in fact, only the starting point.

19   There is discussion throughout the briefs regarding the 3553(a)

20   factors.  The court is and has -- is required to and has

21   considered those in this case.  I want to go through those.

22       The overall guidance in sentencing is that the court is to

23   impose a sentence that is sufficient but not greater than

24   necessary to comply with the purposes set forth in 18 U.S.C.

25   3553(a)(2).

1        The sentence that is imposed first needs to reflect --

2   actually, first needs to take into consideration the nature and

3   circumstances of the offense and the history and

4   characteristics of the defendant.

5        The defendant's briefs focus primarily on this sentencing

6   factor.   There is lengthy discussions concerning the nature of

7   the offense, and even more detailed discussion about

8   Mr. Teausant's history and characteristics.

9        The government does not necessarily disagree with many of

10  the defense's arguments concerning Mr. Teausant's history and

11  his characteristics.

12       As the government provides in its own sentencing

13  memorandum, Nicholas Teausant is a young man with a troubled

14  background.

15       While his aggressive outlook and pattern of

16  self-aggrandizing lies can be understood as a product of a

17  troubled childhood and mild cognitive and moderate social

18  impairments, understanding how he got to where he is does not

19  excuse the actions he undertook to join what he knew to be a

20  violent terrorist organization, but it is an argument that has

21  been raised by the defense as something that the court should

22  take into consideration, has to take into consideration in

23  determining whether a variance should apply in this case.

24       Again, given the sentencing guidelines, while the

25  30-to-life guideline is not applicable, the 15-year sentence,

1   the maximum sentence does, in effect, become the fallback

2   position, and then the court will need to decide whether a

3   variance from 15 years is appropriate in this case.

4       The history and characteristics of Mr. Teausant do tend to

5   support a variance in this case.  That is the first factor.

6       The nature and circumstances of the offense itself create a

7   dilemma for the court in that Mr. Teausant was one of the least

8   successful want-to-be or would-be terrorists probably in most

9   of the cases that have been charged in this country.  Yet the

10  nature of the offense, providing or attempting to provide aid

11  to a terrorist organization, is incredibly troubling to the

12  court.

13       So I'm not sure that there is a balance there or a factor

14  that weighs in favor of one side or the other.  But, again, the

15  defense has done an admirable job on behalf of Mr. Teausant in

16  raising arguments as to why a variance would be appropriate

17  under that 3553(a) factor.

18       The other factors have also been considered by the court as

19  well.

20       The next factor is that the sentence needs to reflect the

21  seriousness of the offense, to promote respect for the law, and

22  to provide just punishment for the offense.

23       It is not a factor that's really addressed head-on in the

24  defense brief, other than as Mr. Galloway has argued today, and

25  in part in the brief, in terms of the actual acts taken by

1    Mr. Teausant.

2         While he said a lot of things, wrote a lot of things, the

3    act that led to his arrest was, in effect, the most serious

4    act.  There were no victims.  There was no attempt to build a

5    bomb, to obtain weapons.

6         The end game is what is of concern to the court.  The end

7    game in this case, and under the crime to which he has plead

8    guilty, is that he would have become a member of a terrorist

9    organization.

10        The government has argued as well under this factor that a

11   sentence at what Mr. Galloway argues would be the low end of

12   the guideline, a sentence of a little more than time served, I

13   think 37 months is what you're recommending, the government

14   believes that would not promote respect for the law for either

15   the public in general or Mr. Teausant himself, who, in fact,

16   admitted that he knew that the maximum penalty for this crime

17   was 15 years and made a statement to the effect that "I'll only

18   be 35 years old if I'm caught and I get out."

19        Again, this isn't specifically addressed in the defense

20   briefs.  And there is, in the court's mind, a need for a

21   sentence, a significant sentence, that does promote respect for

22   the law and provide just punishment.  I'm not convinced that a

23   37-month sentence would achieve that goal.

24        The next factor is to afford adequate deterrence to

25   criminal conduct, and this is where I believe I part ways with

1    the defense.

2        Again, there is little or no discussion regarding

3    deterrence.  It is not a factor that usually affects this

4    court's sentencing decisions in most cases, but this is not

5    most cases.

6        This is a significant and a serious crime.  And whether

7    your actions may not have reflected at times the seriousness of

8    this crime, again, your ultimate goal was to join a terrorist

9    organization.

10       That, in this day and age, and two-and-a-half years ago, as

11   Mr. Galloway points out circumstances were somewhat different,

12   but as I sentence you here today and facing you here today, it

13   is a different world.

14       Recruitment of individuals like yourself around the world

15   has become a serious, significant issue.  And courts, as well

16   as governments, as well as citizens, are now on alert, need to

17   take this extremely seriously, and to do whatever is necessary

18   to deter anyone from even thinking that this is proper conduct,

19   that this is appropriate somehow, that this should be taken

20   lightly.

21       And the issue is that I don't find that a 37-month sentence

22   would meet that factor; that a significant sentence, in these

23   types of cases, are required -- or is required in order to

24   afford adequate deterrence to other would-be, want-to-be

25   possible criminals who are thinking of joining a terrorist

1    organization.

2         I understand that you feel that may unfairly punish you.

3    It was your choice to go down this road.  There are

4    consequences for that choice.  And one of the factors I have to

5    consider and take seriously is the need to deter any other

6    individuals by -- any other individuals to engage in this type

7    of conduct.

8         And I think a significant sentence sends that message.  I

9    think this factor clearly tips in favor of a sentence along the

10   lines of that recommended by the government.

11        And then there is the factor of the need to protect the

12   public from further crimes of the defendant.  You're on

13   medication.  You seem to be much calmer than when you first

14   appeared in this court two-and-a-half years ago, and your

15   lawyers, on your behalf in the briefs, have made numerous

16   arguments that you can be safely supervised, that the public

17   can be protected from any further crimes that you might

18   consider committing through a reduced prison sentence and

19   lengthier supervision.

20        I don't share that same comfort level that I know your

21   lawyers have shared.  There is a concern that I still have.

22   Your youth, in part, cuts against you.

23        You are so young that you have many, many years left in

24   which you can either become a productive member of society or

25   become angry, resentful, and go back to the manner and way in

1    which you behaved which led to your arrest and to your

2    conviction in this case.

3         And again, this is a crime in which the public should feel

4    comfortable in knowing that everything has been done to protect

5    the public.

6         I understand that a prison sentence may likely result in

7    your being isolated, that prison will be hard, that prison will

8    be difficult, but I've got to balance that against what the

9    public needs in these types of cases.  And what is important to

10   the public is obviously safety and security, being comfortable

11   in the knowledge that anybody who is even thinking of or

12   attempting to join a terrorist organization is, at least,

13   safely supervised and/or locked away.

14        Again, it is not a factor that cuts in your favor.  It is

15   one that really cuts against your request for a lower-end

16   sentence.

17        The other factors are -- that have been considered by the

18   court, it's pure speculation on my part, I'm not exactly sure

19   what programs Bureau of Prisons may have for you, and it is not

20   a significant factor in terms that you need a prison sentence

21   to increase your educational and vocational training, medical

22   care.

23        I do know, obviously, that you will stay on your meds.

24   You'll be required to stay on your meds while in prison.

25   That's a plus.  And hopefully there will be vocational or

1    educational opportunities for you.

2        I'm not naive.  I don't believe that prisons are -- even

3    federal prisons are necessarily set up to provide that type of

4    educational or vocational opportunities.  But again, it is not

5    a factor that really influences the court in this case.

6        The range factors, the kinds of sentences available, only

7    prison is available in this case.  Probation is not available.

8        The sentencing guideline itself is, again, a factor, but as

9    Mr. Galloway points out, it really does not come into play as

10   much in this case in terms of a 30-year-to-life sentence is not

11   available.  Only a 15-year sentence is available to the court.

12       And then finally the need to avoid unwarranted sentencing

13   disparities, there, again, was not a lot of discussion of this

14   in the briefs, other than the argument that a maximum sentence

15   of 15 years would appear to unfairly punish someone who

16   attempts this crime as opposed to successfully completes this

17   crime.

18       There's, I think, something to that argument in terms of

19   looking at specifically your actions, your crime, as compared

20   to others who have been sentenced under this section.

21       While others have received 15 year sentences, there are

22   slight differences in your case.  Again, you were much less

23   successful and took much fewer steps than others in those other

24   cases.

25       And that, again, slightly weighs in your favor for a

1   sentence that is below the sentences received by others who

2   have engaged in similar conduct.

3        Then finally, the need to provide restitution to victims is

4   not a factor in this case.

5        Much of the arguments in your brief, Mr. Teausant, for a

6   lower sentence than recommended by probation or the government

7   focuses on your youth and your lack of criminal history.  You

8   were, in fact, only 19 at the time of the offense, and you had

9   no prior criminal convictions.  But as I look at you, I also

10  recognize that you were at one point, before you were arrested,

11  a father.  You abandoned that responsibility.  That concerns

12  me.  You were old enough to have a child, yet not mature enough

13  to take responsibility for that child.

14       You're old enough to know that what you were attempting to

15  do was wrong.  When you turn 18 in this country, you can go to

16  war.  When you turn 19, you are old enough to pay the

17  consequences for attempting to aid a terrorist organization.

18       While you are young, and you were young at the time you

19  committed this crime, you were old enough to know better.

20       And while your lack of criminal history might be a

21  mitigating factor under different circumstances, I don't think

22  it is really of much assistance to you in this case because

23  you, in effect, went from zero to 100.

24       You went from not committing any criminal acts to

25  committing a crime so serious and significant that it calls

1   for, at least under the guidelines, a life sentence.  But for

2   the fact the statute only calls for a 15-year maximum, you

3   would possibly be facing a lifetime sentence in prison.

4        So again, you went from zero to 100 your first time out,

5   and that is of concern to the court.

6        Your willingness to commit this type of crime as your first

7   offense does not bring any comfort to the court that you are

8   unlikely to commit a similar or worse crime in the future.

9        As I said previously, and I say it again, in this

10  situation, with respect to this crime, there is no room for

11  error.  The risks are too high.  And every step possible must

12  be taken to protect the public from any future crimes of the

13  defendant.

14       While I do recognize, Mr. Teausant, that your choices were

15  impacted by your upbringing and your cognitive and social

16  impairments, again, I don't find that it excuses your behavior.

17       You made a knowing, informed decision to attempt to aid a

18  terrorist organization.  Fortunately for us and for you, you

19  were identified and stopped before anyone was seriously injured

20  or killed.

21       The sentence recommended or requested by you, I think,

22  ignores a number of factors that I have gone through under

23  Section 3553(a).

24       In particular, I don't think that a sentence at the low end

25  would reflect or take into proper account the nature and

1   circumstances of the offense itself, the need for the sentence

2   to reflect the seriousness of the offense, the need to provide

3   just punishment, the need to protect the public from further

4   crimes from the defendant, and as I have discussed, a need to

5   afford adequate deterrence.

6       While you now have proclaimed you are a changed man, that

7   you have learned your lesson, that you will not break the law

8   again, and that you should be given the benefit the doubt, it's

9   the nature of the offense in this case that I believe, and that

10  I find, does not entitle you to the benefit of that doubt.

11      The risk to the public far exceeds the reward that you

12  seek.  And it will take years, years and years, for you to gain

13  the trust of those that you seek.  You will need, I believe,

14  significant supervision for many, many years to come.

15      The crime that you attempted to commit demands no less.

16  The public is entitled to no less.  Even after you are released

17  from prison, it is this court's belief that you will require a

18  lengthy period of supervision, and such a lengthy period is

19  warranted.

20      Again, the law allows for a period of lifetime supervision.

21  I think both sides agree that a lengthy period of supervision

22  is warranted in this case, and I do intend to impose a lengthy

23  period of supervision.

24      The government has recommended a variance in your case down

25  to nine years.  While somewhat surprising, it is not totally

1   surprising to me that the government has made this

2   recommendation.  I think it does reflect a careful and fair

3   evaluation by the prosecutor, the difficulties of this case.

4        To your credit, you entered a plea in this case at a

5   relatively early stage of the proceedings.  You have been

6   cooperative, and you have accepted responsibility.

7        And it is those factors, along with the nature and

8   circumstances of the defendant himself, that I believe warrant

9   a variance in this case.

10       It is not my intention to impose a 15-year prison term, but

11   to grant a variance in this case under that 3553(a) factor.

12   But I do part ways with the government as well when it

13   recommends a six-year reduction from the guideline maximum

14   sentence.

15       Ultimately, sentencing is my responsibility.  It is the

16   most difficult part of this job.  Again, I have to impose a

17   sentence that I believe is sufficient but not greater than

18   necessary to meet all these 3553(a) factors.  And in my view,

19   in my opinion, the government's recommended sentence of nine

20   years does not sufficiently reflect the seriousness of the

21   offense, the need to promote respect for the law, and to

22   provide deterrence and protect the public.

23        So I part ways with the government and find that I don't

24   believe a sentence of nine years meets the sufficient portion

25   of the legal requirement, that the sentence be sufficient but

1    not greater than necessary.

2        Ultimately it is my concern as to what your life is going

3    to be like after you're released from prison and how can I

4    fashion a sentence that protects the public to the maximum

5    extent possible.

6        Admittedly, that doesn't necessarily find the impact that

7    prison will have on you is as significant as the impact that

8    your crime could have had or may have had on the public, and

9    clearly I have considered the needs of the public to be greater

10   than the consequences that you face as a result of your

11   criminal conduct.

12       Terrorism has to become a zero tolerance crime,

13   Mr. Teausant.  There is no margin for error.  And it is the

14   court's responsibility to fashion a sentence that takes any and

15   all steps to minimize and reduce any risk, any risk that you

16   might pose in the future.

17       You obviously cannot be kept in prison for the remainder of

18   your life.  I don't believe that sentence would be appropriate

19   under the circumstances.  And obviously neither did Congress in

20   fashioning a statute that maximized the sentence at 15 years.

21       But for all of those reasons, while I do believe a variance

22   is appropriate, I believe only a three-year variance from the

23   15-year maximum would be appropriate in this case.  And

24   therefore, I intend to impose a sentence of 12 years in prison.

25       For all of those reasons and pursuant to the Sentencing

1    Reform Act of 1984, it is the judgment of the court that the

2    defendant, Nicholas Michael Teausant, is hereby committed to

3    the custody of Bureau of Prisons to be imprisoned for a term of

4    144 months.

5        The defendant is ordered to pay a special assessment of

6    $100.  Payment to begin immediately.

7        I find the defendant does not have the ability to pay a

8    fine.  Imposition of a fine is waived.

9        Upon release from prison, the defendant is to be placed on

10   supervised release.  And again, because you will be so young at

11   the time that you are released, I do find that a lengthy, a

12   significant term of supervised release is required.

13       Hopefully we can get to a point where probation can move

14   the court to reduce the supervised release term, but again, to

15   ensure maximum protection, in effect this is an insurance

16   policy not only to assist you, but to make sure that you never,

17   ever even think about engaging in this type of significant and

18   serious criminal behavior.  I'm going to impose a supervised

19   release term of 25 years.

20       And while I'm sure your family will be of assistance once

21   you are released from prison, again, because of your youth,

22   they will not be around at all times.  And it is unfair to

23   require them to serve as your supervisors once you're released

24   from prison for the remainder of their lives.

25       It is up to you as to what you do with your life.  We'll

1    make sure that there is at least a probation officer in place

2    for the 25 years after you're released from prison to assist

3    you in making sure that you never break the law again.

4         Within 72 hours of release from the custody of Bureau of

5    Prisons, the defendant is ordered to report in person to the

6    probation office in the district to which he's released.

7         While on supervised release, the defendant shall not commit

8    another federal, state or local crime, shall not possess a

9    firearm, ammunition, destructive device, or any other dangerous

10   weapon, and shall not illegally possess any controlled

11   substances.

12        The defendant is ordered to cooperate in the collection of

13   DNA as directed by probation.  And the defendant is ordered to

14   comply with the standard conditions which have been recommended

15   by the United States Sentencing Commission.

16        Those are adopted by the court.  There are 13 standard

17   conditions found on page 36 of the presentence report.  All 13

18   conditions are adopted by the court.

19        The defendant is also ordered to refrain from any unlawful

20   use of a controlled substance.  The defendant shall submit to

21   one drug test within 15 days of release from prison, and at

22   least two periodic drug tests thereafter, not to exceed four

23   drug tests per month.

24        The defendant is ordered to comply with the special

25   conditions found on pages 33 and 34 of the presentence report.

47

1   And as an additional special condition, Special Condition 10,

2   the court will add the following special condition:

3       (Reading:)

4       The defendant is ordered to participate in a mental health

5       program as directed by probation which may include taking

6       prescribed medication if so directed by the probation

7       officer.

8       (Reading concluded.)

9       The court will recommend the defendant be incarcerated at

10  an institution in Arizona, but only insofar as the

11  recommendation accords with the security classification and

12  space availability policies of the Bureau of Prisons.

13      Finally, Mr. Teausant, you are advised that you do have a

14  right to appeal.  If you desire to appeal, you must file your

15  notice of appeal in writing with the court within 14 days of

16  today's date.

17      If you cannot afford an attorney for your appeal, the court

18  will appoint one for you.

19      Anything further from the government?

20          MS. HOBLER:  Your Honor, the government would request

21  a recommendation from the court that the defendant participate

22  in the RDAP Program, as well as the skills program that is

23  outlined in Government's Exhibit 4B-1 which is a letter from

24  the Bureau of Prisons outlining programs.

25          THE COURT:  I'll include both those in the court's

1    sentencing order.  Both of those recommendations are adopted

2    and incorporated in the court's order.

3        Anything further?

4            MS. HOBLER:  Thank you.

5            THE COURT:  Anything further, Mr. Galloway?

6            MR. GALLOWAY:  Yes, Your Honor.  We're requesting the

7    institution at FCI Phoenix so he can be close to his father and

8    stepmother.  They live very close to that.  We ask the court

9    include that basis for the recommendation.

10           THE COURT:  I'll so include that in the court's

11   sentencing order as well.

12       Anything further?

13           MS. HOBLER:  No, Your Honor.

14           THE COURT:  Mr. Teausant, good luck to you.

15           THE DEFENDANT:  Thank you.

16           THE COURT:  Let's take a break.

17       (Off the record at 10:45 a.m.)

18       (Whereupon the matter was concluded.)

19                        ---o0o---

20

21

22

23

24

25

1                           REPORTER'S CERTIFICATE

2                                ---o0o---

3

   STATE OF CALIFORNIA   )
4  COUNTY OF SACRAMENTO  )

5

6        I certify that the foregoing is a correct transcript
   from the record of proceedings in the above-entitled matter.
7
            IN WITNESS WHEREOF, I subscribe this certificate at
8  Sacramento, California.

9

10     /S/_Catherine E.F. Bodene_____
             CATHERINE E.F. BODENE, CSR NO. 6926
11           Official United States District Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25